SULLIVAN, RESPONDENT, *v.* NEEL ET AL., APPELLANTS.

(No. 7,670.)

(Submitted September 25, 1937.   Decided October 6, 1937.)

[73 Pac. (2d) 206.]

*Mr. C. A. Spaulding, Mr. James Donovan* and *Mr. George F. Wasson,* the latter two of the Bar of Los Angeles, California, for Appellants, submitted an original and a supplemental brief; *Mr. Spaulding* and *Mr. Wasson* argued the cause orally.

*Mr. Wm. Scallon* for Respondent Sullivan, and *Messrs. Weir, Clift & Bennett,* for Respondent Winston Brothers, submitted an original and a reply brief; *Mr. Scallon* and *Mr. T. B. Weir* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought to quiet the title to 160 acres of land in Jefferson county which were patented as a placer mining claim.

The lands were patented in the year 1874 to Samuel Neel and Jacob S. Crisman. Neel died in 1882; his estate was probated in Lewis and Clark county, and a decree of distribution was entered upon the petition of his surviving widow in the year 1888. This decree does not mention or describe this tract of land, but contains a clause distributing all property owned by the decedent not described therein. In due course of time Jefferson county obtained a tax deed to these lands and premises, and on October 8, 1918, the chairman of the board of county commissioners of that county executed a deed attempting to convey the lands and premises to the plaintiff. Eighty acres of the land were correctly described therein, and the residue was inaccurately described. Thereafter, on January 4, 1922, Jefferson county, acting through the chairman of its board of county commissioners, executed and delivered a correction deed to plaintiff, describing the land. Both of these were quitclaim in form.

The heirs of Samuel Neel were made parties defendant to the action, and they filed answer to the complaint, they being the appellants herein. Plaintiff by his proof asserted title under the deeds from Jefferson county and the tax deed and the proceedings leading up to its execution, also by adverse possession.

Defendants by pleading and proof asserted that the proceedings leading up to the issuance of the tax deed were defective in certain jurisdictional requirements, and that, therefore, the tax deed issued to Jefferson county was invalid and void; that the proof in support of the claim of adverse possession was insufficient in that (a) the quitclaim deeds were inadequate to give color of title to plaintiff, and (b) proof was insufficient to establish adverse possession in the plaintiff.

The trial court made findings of fact in favor of plaintiff on the question of adverse possession, but made no findings with reference to the validity of the tax deed proceedings. A judgment was entered quieting title in the plaintiff. The appeal is from the judgment.

The defendants have by appropriate specifications of error raised and argued the same questions in this court as they did below. They have argued at great length the question of the invalidity of all of the proceedings leading up to the issuance of the tax deed, and that these defects have not been cured by certain curative Acts enacted by our legislature. We regard the questions thus presented as exceedingly close, but under the view we take of the points next considered it is unnecessary to discuss or decide the same.

The record discloses without dispute that plaintiff, after he acquired the first deed, paid all taxes subsequently levied and imposed upon these lands up to the trial of the action. Therefore the requirements of section 9024, Revised Codes, in that respect were fully satisfied.

Section 9019 of our Codes provides: "When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property, under such claim, for ten years, the property so included is deemed to have been held adversely, except that

when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract." The phrase "claim of title" as used in the foregoing section of the statute is synonymous with that of "color of title." (*Morrison* v. *Linn,* 50 Mont. 396, 147 Pac. 166; *Fitschen Bros. Com. Co.* v. *Noyes' Estate,* 76 Mont. 175, 246 Pac. 773.)

It is argued that the quitclaim deeds were insufficient to vest in the plaintiff a color of title within the meaning of the statute. The second deed correctly described the entire tract of land, and the first deed correctly described one-half of the area. Color of title does not depend upon the validity or effect of the instrument, but entirely upon its intent and meaning. (*Fitschen Bros. Com. Co.* v. *Noyes' Estate,* supra.)

In the case of *Morrison* v. *Linn,* above cited, this court quoted with approval the definition of "color of title" from the case of *Beverly* v. *Burke,* 9 Ga. 440, 54 Am. Dec. 351, reading as follows: "What is meant by *color of title?* It may be defined to be a writing, upon its face professing to pass title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used—a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law." And in the case of *Fitschen Bros. Com. Co.* v. *Noyes' Estate* this court said: "And color of title is that which is title in appearance, but not in reality. As a basis of claim by adverse possession, color of title may be shown by any instrument purporting to convey the land or the right to its possession, provided claim is made thereunder in good faith."

These statements are in accord with the current of authority generally. (2 C. J. S., sec. 72, p. 591; 1 Am. Jur., sec. 197, p. 902.) And quitclaim deeds, speaking generally, are sufficient to evidence color of title. (1 Am. Jur., sec. 196, p. 902; 2 C. J. S., sec. 72, p. 603; *Lloyd* v. *Mills,* 68 W. Va. 241, 69 S. E. 1094, 32 L. R. A. (n. s.) 702.) We therefore hold that the correction deed was sufficient to give to the plaintiff color of title in these lands and premises.

The pertinent portion of section 9020, Revised Codes, reads as follows: "For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases: * * * 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, either for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant. * * * " The possession of a tenant is the possession of his landlord as applied to adverse possession of real property. (Sec. 9023, Id.)

It is asserted on behalf of defendants with much confidence that the proof is wholly insufficient to prove adverse possession, since the lands were not inclosed and were occupied only for grazing and placer mining purposes, and as to these only for limited periods,—that is, the occupancy was not continuous throughout the year. Subdivision 3 of section 9020, quoted supra, distinctly provides that lands may be held adversely without inclosing them. Whatever the rule may be elsewhere, our legislature has spoken with finality on this subject. This statute, like many others, finds its counterpart in the state of California from which we adopted it. In the early case of *Weber* v. *Clarke,* 74 Cal. 11, 15 Pac. 431, the California court, in construing the section as applied to the facts of the case then at hand, said: "It will be observed that the section provides in terms that pasturage of land without an inclosure may constitute an adverse possession. There can, therefore, be no further doubt upon this branch of the appellants' case. The question is whether the pasturage must continue throughout the whole year. As stated above, the defendant's pasturage was only during the grazing season,—that is, from February to July, the land during the balance of the year being 'not pasturable.' " We think, however, that this was sufficient, there being no one on the land meanwhile. It is a settled rule with reference to cases of this character that it is sufficient if, in the language of Field, C. J., in *Coryall* v. *Cain,* above quoted [16 Cal. 573], the dominion

and control is " 'by appropriate use, according to the particular locality and quality of the property.' "

Plaintiff testified that the lands were valuable for mining and grazing; that he leased the lands to a Mrs. Peterson for grazing purposes, for which she paid him one dollar a year. He testified that he gave his consent to others to graze their livestock upon the lands. As to others he gave his consent to their prospecting for gold thereon, and he stated that these persons have from time to time prospected the land and removed small quantities of gold. He was corroborated both as to the grazing and mining operations by the persons to whom he had given his consent to graze and mine thereon. In 1932 the plaintiff leased these lands to Winston Bros. Company, who entered upon the premises, some time later operating a dredge for the recovery of gold. Under the lease plaintiff was entitled to a royalty on this recovery. He visited the lands from time to time over the period of years during which he claimed ownership, but did not occupy them in person. One witness testified on behalf of defendants to the effect that the lands were of no value for grazing. This is the only substantial conflict in the testimony. One of the defendants testified they did not know of their interest in these lands until after the commencement of this action.

We have said that this possession of realty to be adverse must be actual, visible, exclusive, hostile and continuous for the full period. (*Ferguson* v. *Standley*, 89 Mont. 489, 300 Pac. 245, and cases there cited.) The character of the possession that will satisfy this rule is determined by section 9020, supra, where the lands are claimed under color of title, and by section 9022 where the claim of adverse possession is not founded upon a written instrument, judgment or decree. Thus it will be observed that the foundation of the claim of plaintiff and the character of the land in question determine the degree and character of possession or occupancy necessary to satisfy the statutes.

Viewing the testimony in the light most favorable to the plaintiff, as we must, and considering it with reference to our statutory provisions which we have discussed above, the evidence was

sufficient to support the findings of the trial court on the claim of adverse possession.

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

Rehearing denied November 24, 1937.