PRITCHARD PETROLEUM CO., Appellant, v. FARMERS
CO-OP. OIL & SUPPLY CO., Respondent.

No. 8743.

Submitted November 7, 1947. Decided February 17, 1948.

190 Pac. (2d) 55.

Mr. H. Norskog, Messrs. Church & Harris, and Mr. G. G. Harris, all of Great Falls, for appellant. Mr. Harris argued the cause orally.

Mr. D. W. Doyle, of Conrad, and Mr. Randall Swanberg, of Great Falls, for respondent. Mr. Swanberg argued the cause orally.

MR. JUSTICE GIBSON delivered the opinion of the court.

Appellant brought this action to recover the value of the use and occupancy of a tract of land situated in the city of Conrad, Montana, together with certain buildings thereon and improvements and fixtures attached thereto. The complaint was filed in the district court on February 8, 1941. Therein it is alleged that appellant was, and for more than ten years prior to the commencement of the action had been, the owner in fee of the tract of land, and that prior to and on or about March 30, 1935, there was situated upon it certain attached property, namely, two buildings, six steel storage tanks, and certain pumps, pipes

4

and fittings connecting the tanks with the pumps so that the entire property could be used for carrying on therefrom the business of retailing and wholesaling gasoline, lubricating oils, and kindred products.

It is averred that at the time last mentioned the respondent entered upon the property and took possession of all of it and used and occupied the premises for dealing in gasoline, oil, and kindred products, and maintained such possession and occupancy to the date of the complaint.

It is further averred that during the period of respondent's occupancy and use of the property it passed through the tanks and pumps and sold from the property in excess of three million gallons of gasoline, distillate, kerosene and lubricating oils, and greases in excess of 125,000 pounds, and that the actual and reasonable value of the use and occupancy of the property for the said period was 1¢ per gallon for each gallon of gasoline and like products sold from the property and 1¢ per pound for all greases sold therefrom.

The complaint then avers that by reason of the facts stated, the respondent became indebted to appellant in the sum of $31,250 and that no part thereof has been paid.

The complaint does not negative a lawful entry and use of the property, and standing alone, might not meet the requirements of Elijah v. Wright, 52 Mont. 438, 158 Pac. 475, but it is aided by averments and admissions in the subsequent pleadings whereby the issues were framed.

A demurrer to the complaint was filed but abandoned and respondent filed answer to the complaint on April 16, 1941, and an amended answer and cross complaint on December 3, 1945, to which was interposed a general and special demurrer, which was sustained in part and overruled in part, and a second amended answer and cross complaint was filed on March 4, 1946, pursuant to permission of the court for the filing thereof. A general demurrer to the second amended answer and cross complaint was interposed by appellant which was overruled, and reply to the second amended answer and answer to the

cross complaint therein contained was filed on April 29, 1946. The dates of the filing of the various pleadings are here given because of appellant's specifications of error in overruling its demurrers and in permitting the filing of amended pleadings by respondent.

Two actions between the same parties involving the ownership of certain storage tanks placed on the said tract, consolidated for trial, were before this court for review and the opinion therein, Pritchard Petroleum Co. v. Farmers Cooperative Oil & Supply Co., Mont., 161 Pac. (2d) 526, contains a statement of some of the facts of this case, and as that opinion is properly before us by virtue of averment and admission in the pleadings herein, reference to it will permit more of brevity in statement than otherwise might be possible.

The record discloses that the plaintiff corporation acquired the property described in its complaint on April 17, 1931, and from that time operated the same as a wholesale and retail gasoline station continuously until January 1933; that the business was then closed until April 1933, when it was reopened and operated for two days a week until July and was intermittently reopened and operated for two days a week until May, 1934, when it was finally closed and not again operated by the appellant. The reason of closing during these periods, the restricted operation thereof, and the final entire discontinuance of business in 1934, was due to bad business conditions and the fact that it would have entailed a loss to keep the place open. The property was encumbered by a real estate mortgage dated October 19, 1931, securing a promissory note in the sum of $3,750 on which only $150 had been paid.

At the time appellant ceased operating the station there were two 15,000 gallon storage tanks purchased from the Brown Sheet Iron & Steel Company, under conditional sale contract, on the premises, two 12,000 gallon steel storage tanks and two 550 gallon tanks used for retailing of gasoline, together with certain pumps, pipes and fittings connecting the tanks and pumps. Two buildings were also on the premises. In December,

1934, the Brown Sheet Iron & Steel Company repossessed the 15,000 gallon storage tanks and removed them from the premises and later sold them to the respondent. The two 12,000 gallon storage tanks were removed from the land by the respondent in April 1935, and used by it at Ledger, Montana.

The respondent went into possession of the property in April 1935, shortly after it had received a quitclaim deed from one Beim purporting to convey the property to it but which only described one of the boundaries of the said property 120 feet in length and another of the boundaries thereof 30 feet in length and which did not complete the lines so as to enclose or describe any land. Beim had received a tax deed from the treasurer of Pondera county on April 1, 1935, purporting to convey to him the premises but with the same incomplete description set forth in his deed to the respondent. Respondent then placed four horizontal storage tanks on the property, including the repossessed tanks which it had purchased from the owner, repaired, enlarged and improved the buildings, and installed new gasoline pumps, and then operated the property for dealing in gasoline, oils and oil products until May 1942. In November 1941 it removed the four storage tanks that it had placed thereon from the property and these, with the two storage tanks on the premises when it took possession, and which it removed to and used at Ledger, were the subject of the litigation between the parties in the case of Pritchard Petroleum Co. v. Farmers Cooperative Oil & Supply Co., supra. Respondent after removal of the four storage tanks from the property in November 1941 continued to operate a retail gasoline station thereon until May 1942, when it removed pumps, pipes, meters, valves, and other equipment onto an adjoining tract of land owned by it and upon which it had previously placed the four storage tanks.

In November 1939 the respondent commenced suit to quiet title to the premises and in the progress of that action the defective description of the premises in the tax deed to Beim and in the quitclaim deed to respondent first became apparent

to the respondent. The result of the action was that title to the property was by decree entered February 9, 1942, quieted in appellant.

Thus it appears that during the period from April 6, 1935, until May 1942, the respondent was in wrongful occupation of real property of appellant. What is the remedy of the owner of the premises? What are the respective rights and obligations of the parties arising out of the facts thus briefly outlined?

Compensation in money, designated as damages, is the remedy afforded, sec. 8659, Rev. Codes of Montana 1935, and the measure of damages for the wrongful occupation of real property as here involved is provided in section 8687, Revised Codes, as follows: ''The detriment caused by the wrongful occupation of real property * * * is deemed to be the value of the use of the property for the time of such occupation, not exceeding five years next preceding the commencement of the action or proceeding to enforce the right to damages, and the costs, if any, of recovering the possession.''

This statute governs the case. The action afforded by the statute is to recover the value of the use of the property for the period of its wrongful detention, not exceeding the time fixed by the statute. The value of the use is the value to the owner of the property, not its value to the wrongdoer. Compensation is the purpose and basis of the action. 28 C. J. S., Ejectment, sec. 144. The value of the use is ordinarily held to be the reasonable rental value of the premises withheld. Leyson v. Davenport, 38 Mont. 62, 98 Pac. 641; 28 C. J. S., Ejectment, sec. 144. Special circumstances may justify other considerations of value. None such appear here.

Instead of a direct averment that the value of the use of the property for the period of its withholding was $31,250, the appellant circuitously stated its case and alleged the amount of gasoline, oils and greases that the respondent sold from the premises during the period of its occupation, and that the reasonable value of the use and occupancy of the property during

the period of its withholding was 1¢ per gallon for each gallon of gasoline, etc., sold and dispensed from the premises and 1¢ per pound for all greases so sold and dispensed therefrom, and that upon that basis the respondent became indebted to appellant in the sum of $31,250.

At the trial appellant sought to prove that the value of the ▮ use of the property, equipped as alleged in its complaint, was 1¢ per gallon for the number of gallons of gasoline, oil, etc., and 1¢ per pound for all grease sold from the premises. Objection to this testimony upon the ground that the property was not equipped with tanks and complete as outlined for basis of the question, and upon the general ground that the evidence sought was incompetent, irrelevant and immaterial, was sustained and offers of proof to the same effect were made, objected to by respondent, and the objections sustained. The objections to this offered testimony were properly sustained. Not only was the foundation for the offers inadequate, but the testimony, if received, would not constitute proof of the value of the use, which here is the rental value of the premises. The volume of business to be done by an alert and able business organization, or by a cooperative with sales advantages incident to its plan of operation, will greatly exceed the amount of business that an inefficient operator will do. The measure implicit in the offered testimony is too uncertain to constitute what is termed rental value. If the occupant had done no business at all, or but little business, the owner of the premises is still entitled to the value of the use. It is the detriment suffered by the owner, not the withholder's gain, nor yet his loss, that measures the compensation to be paid for the wrongful withholding. 28 C. J. S., Ejectment, sec. 144.

When the term "rent" is used, a fixed sum is implied. Blatt ▮ Co. v. United States, 305 U. S. 267, 59 S. Ct. 186, 83 L. Ed. 167; 2 Washburn on Real Property, 6th Ed., sec. 1187. And "value of use" and "rental value" mean practically the same. Straight Bros. Co. v. Chicago, M. & St. P. R. Co., 183 Iowa 934, 167 N. W. 705. Nor would the fact that sometimes a

business place is leased for a minimum cash rental and a percentage of profits above a stated amount effect the rule of evidence. Nor even if custom could be shown of such or similar lease contracts.

The character of the tenant, his business capacity, the uncertainties of business, all make the offered testimony incompetent and inadmissible. It is alleged in respondent's answer that the property when it took possession thereof had no rental value whatever. For the same reason the fact that the owner closed the place entirely because of lack of business would not prove that the property had no rental value.

Not being permitted to make proof of the value of the use ██ of the property under the theory that such value is to be determined by the amount of business done thereat by the respondent, the appellant offered the testimony of its president that the reasonable rental value of the property in the condition it was in when respondent entered into possession thereof, during the time of respondent's occupancy, was $100 per month. This testimony was admitted in evidence. Upon the record and proof made, showing ownership of the property by appellant, the wrongful withholding thereof by respondent, and the rental value thereof as stated, the appellant rested, whereupon respondent moved for nonsuit on the grounds of failure of proof, and for material variance between the pleadings and the proof, in that there was a variance in the measure of damages claimed, and in the ownership of the property for which rental was sought. The court sustained the motion, evidently on the ground of variance as to the measure of damages alleged and the measure proved, for the court had previously stated that "the mere fact that a less quantity of improvements are being taken into consideration would not in the court's opinion at least, mislead the defendant." When a motion for directed verdict on the ground of variance appears contrary to the theory of defense pleaded in the answer, the motion is properly denied. Webber v. Massachusetts Bonding & Insurance Co., 81 Mont. 351, 263 Pac. 101. Where a party is "not surprised by having to meet at

the trial issues not pleaded, he cannot have been misled to his prejudice, and the provisions of section 6585, Rev. Codes (now 9183, Revised Codes 1935), are properly invoked against him.'' Frederick v. Hale, 42 Mont. 153, 112 Pac. 70, 73.

The respondent in the affirmative defense set forth in its answer alleged that ''the rental value of the premises herein-above described, in the condition in which they were when defendant took possession thereof, for and during the entire period of defendant's occupation, was nothing.'' And also that prior to the making of certain improvements alleged to have been made by respondent, ''said premises had no rental value.'' And again, ''that said premises in the condition in which they were'' at the time respondent took possession, ''had very little value for any purpose and had no rental value whatsoever.''

''In the trial of lawsuits variances between pleading and proof are certain to occur, as long experience has shown. Hence, the Code prescribes rules upon the subject, and, in so doing, with the design of preventing mistrials as a result of variances between the pleading and proof, looks to the substance rather than to the form. Material variances only are regarded with gravity. Immaterial variances are deemed of slight consequence. Except that the sections of the 1921 instead of the 1907 Codes are given, the following is quoted from the opinion of Mr. Justice Holloway in Ryan Co. v. Russell, 52 Mont. 596, 161 Pac. 307, 308: 'Our Codes recognize three degrees of disagreement between pleadings and proof. A material variance is one which actually misleads the adverse party to his prejudice in maintaining his action or defense upon the merits. Section 9183, Rev. Codes 1921. An immaterial variance is a discrepancy between the pleading and proof of a character so slight that the adverse party cannot say that he was misled thereby. Section 9184. A failure of proof results when the evidence offered so far departs from the cause of action pleaded that it may be said fairly that the allegations of the pleading in their general scope and meaning are unproved. Section 9185. If the variance is a material one, the court should permit the pleading to be

amended, upon such terms as may be just. Section 9187. If the variance is immaterial, the court may direct the facts to be found according to the evidence, or may permit the pleading to be amended without the imposition of terms. Section 9184.' '' Kakos v. Byram, 88 Mont. 309, 292 Pac. 909, 911.

In view of the state of the pleadings, of respondent's clear conception of the facts and the law involved, as disclosed by the entire record, we do not consider that there was a material variance between the pleadings and the proof. The respondent could not have been misled by appellant's manner of alleging the value of the use of the property. It denied that it had any use value, and affirmatively and repeatedly alleged that it had no rental value whatever. There being no material variance, as defined by the statute, there could be no requirement of amending the complaint. It was error to grant the motion for nonsuit.

There is a question raised in appellant's specifications of error that we are asked to consider. It arises out of the matters of defense and cross complaint set forth in respondent's answer. This and other questions were not directly passed upon at the trial as the respondent was not put to its proof, but the court stated, during the trial, its view of the law applicable to the issues framed by the pleadings.

To this end we advert to respondent's pleading. In its second amended answer and cross complaint it is stated that respondent went into possession of the property in good faith, under color of title, setting forth as an exhibit the tax deed to Beim and alleging conveyance by Beim to it. These deeds, as stated, described only one side line and one end line of the tract. That it thereupon placed permanent improvements on the property to the value of $2,000; that appellant knew of its occupancy of the property, knew of the tax proceedings taken for the purpose of divesting appellant's title to the property, knew of the improvements being made by respondent on the property, but made no claim and asserted no title to the property until 1939 when the respondent commenced its suit to quiet title to the

property; that the property in the condition it was in when it took possession was of no rental value whatever for the entire period of respondent's occupancy thereof.

The adjudication of the trial court in the two cases involving ██ ownership of the six storage tanks, and the opinion and judgment of this court in the case of Pritchard Petroleum Co. v. Farmers Cooperative Oil & Supply Co., supra, are also pleaded. The appellant demurred generally to this pleading and assigns error because the demurrer was overruled. We see no error in this nor in the orders of the court permitting respondent to file its amended pleadings. No abuse of discretion is shown in granting leave to file amended pleadings. Ample time to meet the issues was given before trial.

The rule is to allow rather than deny amendment. To deny ██ is an exception. Fowlis v. Heinecke, 87 Mont. 117, 287 Pac. 169. The second amended answer and cross complaint was not vulnerable to attack by general demurrer.

Appellant contends that the respondent did not hold "under color of title" and therefore cannot offset against the value of the use of the property, the value of permanent improvements if any, placed upon the property by it. This is the question appellant particularly urges us to answer. This by reason of the statute, section 9491, Revised Codes 1935, which is as follows: "When damages are claimed for withholding the property recovered, upon which permanent improvements have been made by a defendant, or those under whom he claims, holding under color of title adversely to the claim of plaintiff, in good faith, the value of such improvements must be allowed as a set-off against such damage."

This court said in the case of Pritchard Petroleum Co. v. Farmers Cooperative Oil & Supply Co., supra [161 Pac. (2d) 531], that, "the tanks were returned to said tract in good faith under color of title and in the mistaken belief that it was the legal owner of said tract." Respondent contends that this statement is an adjudication that the deed to it constituted "color of title." Appellant says it is but obiter dictum. This state-

ment, however, was made in determining the intention of respondent in returning certain tanks to the land. "Did respondent intend, in placing the tanks on the land, that they should become fixtures," was the question under consideration by the court when the language was used. Whether respondent then held the land under "color of title," or under claim of title without color, or without title or claim, was only of importance in the inquiry as to its intention when it affixed the tanks to the land.

One may place fixtures upon the land of another without either claim or color of title thereto and still intend that they shall become part of the realty. The quoted statement is, as appellant contends, and as clearly appears, merely obiter dictum. It was in no sense an adjudication or holding as to what is required to constitute "color of title," as the expression is used, in the cases relating to adverse possession of real estate, or in the occupying claimants Act, section 9491, Revised Codes. In Morrison v. Linn, 50 Mont. 396, 147 Pac. 166, 167, Justice Holloway refers to the confusion that has been introduced into the books by the ill advised use of "color of title" and "claim of title" and indicates that the legislators should have used, in section 9019, treating of occupation under written instrument or judgment, the term "color of title" instead of "claim of title." It is to be noted, however, that nowhere in the statute relating to adverse possession of real estate, Chapter 26, Revised Codes of 1935, "Limitation of Actions for the recovery of Real Property," is the term "color of title" used. Section 9019 of the Chapter provides that one who holds land adversely to the true owner, under a claim of title, basing such claim "upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property, under such claim, for ten years, the property so included is deemed to have been held adversely." This section describes what text writers and courts

have termed "color of title" but there is no statutory definition thereof expressly using the term. The term is merely a shorthand rendering of the status and rights of one who holds real property under the conditions set forth in section 9019. The statute refers to "the property included in such instrument," as being the property held under the "claim of title," and the property held adversely, even though only part thereof be actually occupied by the claimant. The purpose of the rule of "color of title" is that the instrument or document relied on as "color" shall describe the land so that the extent of the claim of an occupant may be determined.

This court has adhered to this rule, and it cannot permit such passing statement, no part of its decision, to be construed as a departure from its recognized and settled decision. The description of the land is the sine qua non of color of title, as it is applied in cases of adverse possession. If the instrument, though invalid or ineffective for the purpose intended, "describes the land with sufficient certainty, purports to convey it, and is not void on its face, it gives color of title." This rule, as stated in Allen v. Mansfield, 108 Mo. 343, 18 S. W. 901, is the rule in Montana. (Morrison v. Linn, 50 Mont. 396, 147 Pac. 166. A description of the land is necessary in an instrument relied on as color of title. Sullivan v. Neel, 105 Mont. 253, 73 Pac. (2d) 206; Fitschen Bros. Commercial Co. v. Noyes' Estate, 76 Mont. 175, 246 Pac. 773. This is in accord with the language of section 9019, Revised Codes of Montana 1935.

The fact that the instrument under which respondent claimed title did not constitute color of title does not mean, however, that it may not offset against the value of the use of the property, the value of such permanent improvements, if any, which it placed thereon, while in possession thereof in good faith, believing it owned the same. Its right to such set off is not entirely dependent upon the statute, section 9491, Revised Codes.

At common law, after it had adopted the rule of equity, which equity, in turn, had borrowed from the civil law, an occupying claimant in good faith of land upon which he had

placed permanent improvements could recoup the value of the improvements, to the extent that they had enhanced the value of the land, against the claim of the true owner for mesne profits. Green v. Biddle, 8 Wheat., 21 U. S. 1, 5 L. Ed. 547; 27 Am. Jur. 262-3.

This rule has been followed in cases at common law, and in some cases recovery over against the true owner when the value of the improvements exceeds the value of the mesne profits has been allowed. The latter is not the prevailing rule, however. See Roses Notes to the cited case in Volume 1 thereof, pages 1191-1202.

. How has our occupying claimants Act, section 9491, Revised ▮▮▮▮▮▮ Codes of 1935, affected the rule? While the Code provides that there is in this state no common law in any case where the law is declared by the Code, it also provides that where the law is not so declared, "if the same is applicable and of a general nature, and not in conflict with the code or other statutes, the common law shall be the law and rule of decision." Sec. 10703, Rev. Codes 1935. There being no words of prohibition in the statute, that in no other cases than the one specifically named in section 9491 is an occupying claimant permitted to recoup the value of improvements placed on the land of another against the owner's claim for use and occupation, it follows that other cases that may arise, such as estoppel by conduct, or by silent acquiescence when under duty to speak, fraud, or the like, are to be governed by the rule and decision of the common law, because the field indicated is not covered by the specific statute. In such cases the rule that a statute upon a subject governed by the common law is not presumed to make any alterations in that law further than is expressly declared, and that a statute, made in the affirmative, without a negative, expressed or implied, does not take away the common law save to the extent that is expressly or by necessary implication so declared. 50 Am. Jur., pp. 339-340, par. 346 and cases cited.

This is the rule in Montana and it is applicable here in the

light of the purpose, scope and purview of section 9491, Revised Codes. Conley v. Conley, 92 Mont. 425, 15 Pac. (2d) 922; State ex rel. La Point v. District Court, 69 Mont. 29, 220 Pac. 88; Forrester v. Boston & Montana Consol. Copper & Silver Min. Co., 21 Mont. 544, 55 Pac. 229, 353.

It follows that upon the trial, if the facts shown warrant the application of the equitable rules adopted by the common law, such rules may be applied herein. The value of the improvements only to the extent that the value of the property is enhanced thereby may be considered. 27 Am. Jur. 277. The rule does not go to the extent that a judgment over may be given the owner if the value of the improvements exceeds the value of the use of the premises.

For the error of granting the nonsuit the judgment appealed from is reversed and the cause is remanded for a new trial.

Mr. Justice Choate, concurs.

Mr. Justice Angstman, not participating.

Mr. Justice Metcalf, (concurring in result).

I concur in the foregoing opinion of Mr. Justice Gibson except for what is said therein regarding "color of title."

The court's declaration in the case of Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co., Mont., 161 Pac. (2d) 526, 531, that "the tanks were returned to said tract in good faith under color of title and in the mistaken belief that it was the legal owner of said tract" cannot be shrugged away as obiter dictum.

An examination of the questions presented in the case of Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co., supra, reveals that the court was required to consider and pass upon the question of the title of the respondents. In the course of this consideration the court made the statement above quoted. Perhaps it was not necessary to the decision to declare that the tanks were placed on the land "under color of title." Perhaps it can be argued that it was enough to say that good faith was all that was necessary. But after argument of counsel and consideration by the court the statement was made.

"A court's decision within issue fully argued by counsel and deliberately considered by court in its opinion is not 'dictum.'" Bottomly v. Ford, Mont., 157 Pac. (2d) 108; Spratt v. Helena Power Transmission Co., 37 Mont. 60, 94 Pac. 631.

I think that the declaration that the defendant returned the tanks to the land in good faith under "color of title" is a valid utterance by this court and is now the law of the case binding upon the trial court and this court alike.

Therefore I am of the opinion that the respondent is entitled to a set-off of the value of the improvements both under the common law rule as outlined in Justice Gibson's opinion and under the provisions of section 9491, Revised Codes.

Mr. Chief Justice Adair, (dissenting).

Under the pleadings and theory on which plaintiff submitted the cause and the evidence admissible thereunder the trial court's determination of the questions of law and fact was correct and its judgment should not be reversed.

The property involved has been the subject of much litigation. See Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co., Mont., 161 Pac. (2d) 526, consolidated appeals decided June 2, 1945.

The land here involved is a rectangular tract 30 feet wide and 120 feet long. It is situate near the intersection of Fourth Avenue and Dakota Street in the town of Conrad, Pondera county, Montana.

The southeast corner of the tract is a point 40 feet westerly from Dakota Street and 40 feet northerly from Fourth Avenue. The side boundary lines are parallel—they also parallel Dakota Street. The end boundary lines are parallel—they also parallel Fourth Avenue.

Thus to accurately locate and describe the tract of land here involved all one need do is to begin at a point 40 feet westerly from Dakota Street and the same distance northerly from Fourth Avenue and from such point of beginning, describe a rectangle 120 feet long and 30 feet wide, the easterly boundary of which parallels Dakota Street at a distance of 40 feet and the southerly

boundary of which parallels Fourth Avenue at a distance of 40 feet.

There is nothing particularly difficult about the location or the description of this small, regular, rectangular tract of land.

The salient facts essential to a correct understanding of the present controversy are as follows:

From March 1929 to April 17, 1931, the above tract of land was owned by Mrs. Griff Pritchard, sometimes known as D. M. Pritchard, who conducted thereon a wholesale business in the distribution of gasoline, distillate, lubricating oils and greases.

In May 1929 Mrs. Pritchard contracted to purchase on conditional sales contract two horizontal 15,000 gallon steel storage tanks. These she procured from the vendor, Brown Sheet Iron and Steel Company of St. Paul, Minnesota, and placed same upon the above tract.

In addition to the two horizontal 15,000 gallon tanks, Mrs. Pritchard also placed upon the tract, two upright or vertical 12,000 gallon steel storage tanks.

On April 17, 1931, Mrs. Pritchard conveyed her said tract of land on which the tanks were then situate, to Pritchard Petroleum Company, a corporation organized but a few days previous under the laws of this state. Neither Mrs. Pritchard nor her grantee, Pritchard Petroleum Company, paid for the two horizontal 15,000 gallon storage tanks and the vendor, Brown Sheet Iron and Steel Company, sent a representative to repossess the tanks under its conditional sales contract thereon.

The taxes on the tanks and property for some years past had not been paid and the county officials of Pondera county required the vendor to pay the delinquencies before allowing the two horizontal 15,000 gallon tanks to be repossessed or removed from said land of Pritchard Petroleum Company.

The vendor paid the delinquent taxes and thereupon repossessed the two horizontal 15,000 gallon tanks in December 1934, moving them to another tract of land occupied under

lease by Farmers Co-op. Oil and Supply Company, which company thereafter purchased said two horizontal tanks from the vendor, paying it therefor on January 17, 1935.

On January 26, 1935, N. C. Beim, as receiver of the vendor, Brown Sheet Iron and Steel Company, purchased from Pondera county a certificate of tax sale to the aforesaid tract of land.

Notice of application for a tax deed was given and thereafter on April 1, 1935, the county treasurer of Pondera county made and delivered to said N. C. Beim, receiver of Brown Sheet Iron and Steel Company, a tax deed purporting to grant and convey to him the aforesaid particular tract of land so sold by the county for delinquent taxes.

Five days later, to-wit, on April 6, 1935, said receiver made, executed and delivered to the respondent, the Farmers Co-op. Oil and Supply Company, a quitclaim deed purporting to convey to it all of the said tract of land and property as described in and conveyed to said receiver by said tax deed. Following the delivery to it of the aforesaid deed from the receiver, the Farmers Co-op. Oil and Supply Company, removed the two vertical tanks to its station at Ledger, Montana.

In November 1935 the Farmers Co-op. Oil and Supply Company, under the belief that it then owned the described tract of land, again placed thereon the two horizontal 15,000 gallon tanks which it had theretofore purchased from the receiver of the vendor, Brown Sheet Iron and Steel Company, as aforesaid, and in addition, it placed thereon two smaller horizontal tanks, and otherwise improved the tract and premises which it thereafter used for a period of approximately five years in its business of selling gasoline, distillate, oils and greases.

*Case No. 5450.* On November 4, 1939, the Farmers Co-op. Oil and Supply Company commenced cause of action No. 5450 in the district court of Pondera county seeking to quiet title to the tract of land so conveyed to it by the quitclaim deed from N. C. Beim, as receiver of the Brown Sheet Iron and Steel Company. The Pritchard Petroleum Company filed a separate

answer and cross complaint in such action and on February 9, 1942, judgment was entered in its favor declaring it to be the owner of the described tract and quieting its title thereto. No appeal was taken from such judgment.

*Cases Nos. 5607 and 5637.* Causes of action Nos. 5607 and 5637 were commenced by Pritchard Petroleum Company on November 15, 1941, and March 19, 1942, respectively, seeking to quiet title (a) to the two vertical 12,000 gallon tanks originally purchased by Mrs. Pritchard, (b) to the two horizontal 15,000 gallon tanks originally purchased by Mrs. Pritchard from the Brown Sheet Iron and Steel Company, but never paid for, and (c) to the two smaller horizontal tanks placed on the tract by the Farmers Co-op. Oil and Supply Company after it had acquired the aforesaid quitclaim deed to the real estate.

The district court rendered and entered a judgment for the Farmers Co-op. Oil and Supply Company, declaring it to be the owner of the two smaller horizontal tanks last above mentioned and quieting its title thereto. No appeal was taken from such judgment, hence Farmers Co-op. Oil and Supply Company is the adjudicated owner of the two smaller horizontal tanks last mentioned.

As to the two vertical 12,000 gallon tanks and the two horizontal 15,000 gallon tanks the district court in causes numbered 5607 and 5637 rendered judgments for Pritchard Petroleum Company, declaring it to be the owner thereof and quieting its title thereto. On consolidated appeals this court affirmed such judgments in Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co., supra.

The question for decision on the two former appeals is clearly stated in this court's opinion therein as follows:

"The question involved in each of the cases is whether or not the storage tanks placed upon the tract of land owned by the Pritchard Petroleum Company became affixed to the land and the property of the owner of the tract of land upon which they were placed." Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co., supra, Mont., 161 Pac. (2d) at page 530.

This court determined that the two horizontal 15,000 gallon tanks and the two vertical 12,000 gallon storage tanks whose ownership was then in controversy became affixed to the land and that they were therefore the property of the Pritchard Petroleum Company, the adjudged owner of the tract of land upon which the tanks were placed, and affirmed the judgments of the district court so decreeing. In its opinion this court also said: "In the fall of 1935 the two horizontal tanks were returned to the tract of land, * * * the buildings were repaired, enlarged and improved, new gasoline pumps were installed and the premises were thereafter used for a period of approximately five years by the Farmers Co-operative Oil and Supply Company in its operation of the selling at retail of gasoline, distillate, oils and greases. * * *

"In November 1935, under the mistaken belief that it owned the tract of land later (February 9, 1942), quieted in Pritchard Petroleum Company, the Farmers Co-operative Oil and Supply Company returned the two horizontal tanks to the said premises and continued to use the tanks in conducting its retail business of selling gasoline distillate oils and greases. The Farmers Co-operative Oil and Supply Company was incorporated to conduct the business in which it was engaged, and in replacing the tanks upon land it thought it owned and to be used in the business to which the tanks and land were applied and the tanks being affixed as originally placed upon the land clearly indicates that it intended to affix the tanks to the realty. *The tanks were returned to said tract in good faith under color of title and in the mistaken belief that it was the legal owner of said tract.* However, there was no agreement between the Farmers Co-operative Oil and Supply Company and the Pritchard Petroleum Company that the Farmers Co-operative Oil and Supply Company could remove the tanks affixed to the realty of the Pritchard Company, and the Pritchard Petroleum Company did not choose to require the Farmers Co-operative Oil and Supply Company to remove its tanks." (Emphasis supplied.)

Under such facts and circumstances the provisions of section 9491, Revised Codes of Montana of 1935, are available to the Farmers Co-operative Oil and Supply Company when sued for damages for holding the property "under color of title adversely to the claim of the plaintiff" Pritchard Petroleum Company.

Section 9491 provides: "When damages are claimed for withholding the property recovered, upon which permanent improvements have been made by a defendant, or those under whom he claims, *holding under color of title* adversely to the claim of plaintiff, in good faith, the value of such improvements must be allowed as a set-off against such damage." (Emphasis supplied.)

However in the case at bar the appellant, Pritchard Petroleum Company, contends that the respondent Farmers Co-op. Oil and Supply Company did not hold "under color of title" as mentioned in section 9491, supra, hence it may not offset against the value of the use of the property, the value of the improvements which the Farmers Co-op. Oil and Supply Company placed upon the particular tract of land in question.

This court expressly and clearly held in its former opinion that the defendant Co-op. Company placed the permanent improvements on the tract of land "in good faith under color of title and in the mistaken belief that it was the legal owner of said tract." Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co., Mont., 161 Pac. (2d) 526, at page 531. Now my associates say: "The quoted statement is, as appellant contends, and as clearly appears, merely obiter dictum." My associates further say: "It was in no sense an adjudication or holding as to what is required to constitute 'color of title,' as the expression is used, in the cases relating to adverse possession of real estate, or in the occupying claimants Act, section 9491, Revised Codes." Next an attempt is made to distinguish the term "color of title" from the term "claim of title" and to substitute for the statutory provisions of section 9491, Revised Codes, an ancient common law rule.

In my opinion, the learned district judge, Hon. William R. Taylor, who wrote the opinion for this court on the two former appeals and the four members of this court who concurred therein, understood full well the meaning of the technical legal phrase ''color of title'' and that they each and all intended to use the term employed and not the phrase ''claim of title'' as the majority opinion would now write into their opinion as a more convenient if not a more appropriate substitute. ''Color of title'' is what the Farmers Co-op. Oil and Supply Company had—''color of title'' is what this court held it had in two cases involving the title to the same property, and ''color of title'' is what this court should here and now recognize that it had in this case involving a claim for damages for the use of the property in question. This fact will more clearly appear from the facts hereinafter stated.

*Case No. 5533.* The instant case bearing district court No. 5533 was commenced on February 8, 1941.

The complaint avers: That plaintiff and defendant are corporations duly organized under the laws of the state; that at the commencement of the action and for more than ten years prior thereto the plaintiff, Pritchard Petroleum Company, was the owner in fee of the following described premises situate in the town of Conrad, Montana, to-wit: ''Beginning at monument at intersection of Fourth Avenue and Dakota Street, Town of Conrad, Pondera County, Montana, thence in a northeasterly direction parallel to Dakota Street a distance of forty feet; thence in a northwesterly direction parallel with Fourth Avenue a distance of forty feet, this being the point of beginning; thence in a northeasterly direction parallel with said Dakota Street, a distance of one hundred twenty feet; thence at right angles in a northwesterly direction a distance of thirty feet; Thence at right angles in a southwesterly direction a distance of one hundred twenty feet; thence at right angles in a southeasterly direction a distance of thirty feet to the point of beginning;

''The aforementioned Fourth Avenue and Dakota Street be-

ing in the Second Addition to the Town of Conrad, Pondera County, Montana; the above mete and bound tract being within the Southeast Quarter of the Northeast Quarter (SE¼NE¼) of Section twenty-three (23), Township Twenty-eight (28) North, Range three (3) West, Montana Meridian''; that situate upon said premises was the following attached property, to-wit: ''One two story frame warehouse building; one frame service station building; two, approximately 12000 gallon steel storage tanks; two approximately 15000 gallon steel storage tanks; two, approximately 550 gallon steel storage tanks; two pumps used for retailing; two pumps used for wholesaling; one pump jack and motor; one meter; all necessary pipe, valves, connections and fittings to connect the said tanks with the said pumps''; that on or about March 30, 1935, the defendant ''entered upon and took possession of all of the said lands * * * and property then situated thereon and * * * then began the use and occupation of said property and the whole thereof and has continued to use and occupy the same exclusively * * * to the date of this complaint * * * in carrying on * * * the business of wholesaling and retailing of gasoline, distillate, kerosene, lubricating oils and greases and their kindred products''; that ''the actual and reasonable value of the use and occupancy of said property * * * during all of the times herein referred to, was one cent per gallon for each gallon of gasoline, distillate, kerosene and lubricating oils sold and dispensed from the said premises and one cent per pound for all greases so sold and dispensed therefrom''; that ''the profits accruing to the said corporation from the use and occupancy of the said property * * * has been taken, absorbed and used by the said corporation in its business and has become a part of its assets''; that from 1935 to the time of the filing of the complaint the defendant corporation sold and dispensed from said property gasoline, kerosene, distillate and lubricating oils in excess of three million gallons, and greases in excess of 125,000 pounds, the exact quantity being unknown to plaintiff and in the exclusive possession of the defendant''; that ''by reason of the foregoing, the de-

fendant corporation has become indebted to plaintiff in the sum of $31,250 no part of which has ever been paid.''

The defendant appeared by demurrer which urged the insufficiency of the complaint to state a cause of action and also that the complaint is uncertain and ambiguous in that ''it does not state and it cannot be ascertained therefrom what was the actual and reasonable value of the use and occupancy of the property described'' from ''on or about May 1, 1935 and up to the date of said complaint.''

Subsequent to demurrer and answer defendant filed a second amended answer wherein it admits the incorporation of the plaintiff and defendant; admits that the plaintiff now is and prior to the year 1935 was the owner of real property described; admits that during the year 1935 defendant went into possession of property described and remained in possession until the latter part of 1941 but ''alleges that such occupation by defendant was in good faith, under color of title and with the belief that defendant was the true and lawful owner of said premises''; and denies all other allegations of the complaint.

For a separate and affirmative defense the defendant alleged that ''during the year 1934 and prior thereto, plaintiff herein was the record owner of that certain tract of land situated in the City of Conrad, County of Pondera, State of Montana, known as Tract E in said city, and more particularly described'' as set forth and described in plaintiff's complaint; that prior to the year 1934 the premises had been used as a gasoline service station but during the year 1934 and for some time prior thereto had not been used by plaintiff but had been abandoned by the plaintiff and were in a state of disrepair in that a portion of the roof of the building was gone; that the windows were broken out of said building; that a part of the metal sheeting of which the building was constructed had been removed; that substantial portions of the equipment theretofore used on the premises had been removed and that the service station thereon had been dismantled; that in January 1935 certain storage tanks on the property had been repossessed by the Brown Sheet Iron and

Steel Company and removed from the premises and that at the time the premises were not being and could not be used as a service station and that because of the then condition of the premises they had very little value for any purpose and had no rental value whatever; that on April 1, 1935, the county treasurer of Pondera county intending to convey said real estate to N. C. Beim, as receiver of Brown Sheet Iron and Steel Company, executed and delivered to him a tax deed; that thereafter the defendant purchased from Brown Sheet Iron and Steel Company the two storage tanks which it had theretofore repossessed from and removed from the premises and that on April 6, 1935, N. C. Beim, as receiver of Brown Sheet Iron and Steel Company, transferred and conveyed said real property to defendant, whereupon "defendant went into possession of the premises described in the complaint under said conveyance herein in good faith, under color of title, and in the belief that it was the true and lawful owner of said premises"; that defendant remained in possession until on or about November 1941 at which time it vacated the premises and has not been in possession of them since that time; that after the delivery to it of said deed from the receiver of said Brown Sheet Iron and Steel Company the defendant made extensive detailed improvements on the property, which improvements were of the value of $1,200 and necessary in placing the property in a usable condition and that the value of the property by virtue of said improvements was enhanced in the sum of $2,000; that prior to the making of said improvements the premises had no rental value; that the defendant paid the taxes on said property each year beginning with the year 1934 to and including the year 1941 in the aggregate amount of $712.90; that the title to the 15,000 gallon storage tanks was determined in district court cause numbered 5637; that an appeal was taken to the Supreme Court of the state of Montana from the judgment of the district court in said cause and that in said cause the appellate court decided and held that the two 15,000 gallon storage tanks were legally repossessed by the agent of the vendor company as per-

sonal property and were legally sold to defendant herein; "that in November, under the mistaken belief that it owned said tanks, the defendant returned the said two tanks to said premises and affixed them to the realty; that said tanks were so returned to said premises in good faith under color of title and in the mistaken belief that it was the owner of said premises, a copy of which said decision of the Supreme Court is hereto attached, marked Exhibit B, hereby referred to and made a part herein; that said decision has not been revised, modified nor altered and is still in full force and effect, and is res adjudicata."

By reply the plaintiff placed in issue the affirmative matters set forth in the second amended answer.

In the tax deed of April 1, 1935, the county treasurer of Pondera county granted to N. C. Beim, receiver of Brown Sheet Iron and Steel Company, all the real property situated in Pondera county, state of Montana, described as follows: "Beginning at the monument at the intersection of Fourth Avenue and Dakota Street, thence in a northeasterly direction parallel to Dakota Street a distance of 40 feet; thence in a northwesterly direction parallel with Fourth Avenue a distance of 40 feet, this being the point of beginning; thence in a northeasterly direction parallel with Dakota Street a distance of 120 feet; thence at right angles in a northwesterly direction a distance of 30 feet; thence at right angles in a southwesterly direction a distance of 30 feet, to the point of beginning. The aforementioned Fourth Avenue and Dakota Street, being in Second Addition to the Town of Conrad, Montana."

The deed of conveyance which N. C. Beim, as receiver of Brown Sheet Iron and Steel Company, grantor, made, executed and delivered on April 6, 1941, to the Farmers Co-op. Oil and Supply Company of Conrad, Montana, grantee, recites that the grantor does thereby convey, demise, release and forever quitclaim unto the grantee and its assigns the tract of land described in the same words and manner as is set forth in the tax deed but with the following addition, namely: "The aforementioned Fourth Avenue and Dakota Street, being in Second

Addition to the Town of Conrad, Montana—the above described mete and bound tract being within the SE¼NE¼ of Sec. 23, Twp. 28 N. of Rge. 3 West of Montana Meridian, Montana, together with all the tenements, hereditaments and appurtenances thereunto belonging and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest property, possession, claim and demand whatsoever as well in law as in equity, of the said party of the first part, of, in or to the said premises and every part and parcel thereof.''

In describing the boundaries of the land conveyed in the tax deed of April 1, 1935, and in the quitclaim deed of April 6, 1935, the common place of commencing the survey is ''at the monument at the intersection of Fourth Avenue and Dakota Street, thence in a northeasterly direction parallel to Dakota Street a distance of 40 feet; thence in a northwesterly direction parallel with Fourth Avenue a distance of 40 feet, this being the *point of beginning*'' or point No. 1, marking the southeasterly corner of the tract.

From point No. 1 the easterly boundary of the described tract, according to both the tax deed and the quitclaim deed, is a line running ''in a northeasterly direction parallel with Dakota Street a distance of 120 feet'' being Point 2, which point is the northeasterly corner of the tract. Thus points Nos. 1 and 2 are each 40 feet northwesterly from Dakota Street. From Point No. 2 both deeds prescribe a course ''at right angles'' with the easterly boundary line of the described tract extending ''in a northwesterly direction a distance of 30 feet,'' being point No. 3, which point is the northwesterly corner of the tract. Thus point No. 3 is 70 feet northwesterly from Dakota Street and 160 feet northeasterly from Fourth Avenue. From point No. 3 the course is ''at right angles'' with the northerly boundary line of the tract running in ''a southwesterly direction a distance of 30 feet,'' which is point No. 4, being the southwesterly corner of the tract *as erroneously described in the tax and quitclaim deeds,* the correct description calling for

a westerly boundary line of 120 feet whereas the tax deed describes a westerly boundary line of only 30 feet. Point No. 4 in the tax and quitclaim deeds is thus 70 feet northwesterly from Dakota street, 130 feet northeasterly from Fourth Avenue and 30 feet southwesterly from point No. 3, making the northwesterly corner of the tract. From point No. 4, being the southwesterly corner of the described tract, the course described in the tax deed and in the quitclaim deed runs "to the point of beginning," to-wit to point No. 1, being the southeasterly corner of the described tract, from which point the start was made. Thus the southern boundary of the tract described in said deeds is a straight line extending from point No. 4 to point No. 1. Points Nos. 1, 2, and 3 are correctly and accurately located and described in both deeds. Point No. 4 alone is incorrect and inaccurate—having been erroneously placed at 30 feet southwesterly from point No. 3 whereas, to take in all of the land of the tract sold for delinquent taxes, it should have followed the westerly boundary line of the tract for an additional 90 feet. Nevertheless, point No. 4 as so located in said deeds establishes the southwesterly corner of the tract conveyed and the descriptions in both the tax deed and in the quitclaim deed clearly establish four corners so that the grantees therein acquired title to all the lands bounded by straight lines drawn from such four points.

There can be no question but that a deed conveying one tract described by metes and bounds within a larger parcel is effective to show color of title to the smaller tract so described.

Clearly, the tax deed and the quitclaim deed each should have described and the grantees named therein should have had conveyed to them a rectangular tract 120 feet long and 30 feet wide, the easterly boundary line of which parallels Dakota Street at a distance of 40 feet and the southerly boundary line of which parallels Fourth Avenue at a distance of 40 feet, yet, through obvious error made in copying the course described by the surveyor, such deeds describe the tract with an easterly boundary 120 feet long, a northerly boundary 30 feet long, a

westerly boundary 30 feet long, and a southerly boundary extending from the southerly terminus of the westerly boundary line "to the point of beginning."

Under such facts the majority opinion is clearly inaccurate and contrary to the record in stating that the respondent Farmers Co-op. Oil and Supply Company went into possession of the property under a quitclaim deed from one Beim which "did not complete the lines so as to enclose or describe any land" and in stating that "These deeds, as stated, describe only one side line and one end line of the tract." Each deed designates four points marking the four corners of the tract described. Three of the corners are accurate and the fourth corner is located 90 feet short of where it properly belongs, but nevertheless the entire tract of land as described in the deeds is capable of being accurately ascertained and identified and all four of the boundaries so fixed lie within the correct boundaries of the entire tract involved if the boundaries of the entire tract were fully and accurately given.

*Color of Title.* In Morrison v. Linn, 50 Mont. 396, 401, 147 Pac. 166, 168, this court in construing section 6436, Revised Codes 1907, now sec. 9019, Rev. Codes 1935, said: "* * * for one who holds land under a *written* instrument, a statute or a judgment or decree of court which appears to convey or confirm title, but does not do so in fact, holds under 'color of title'; that is to say, he holds by virtue of something which gives him a colorable title only. This is the meaning of the phrase as used by discriminating courts and text-writers."

This statement is quoted with approval in Fitschen Bros. Commercial Co. v. Noyes' Estate, 76 Mont. 175, 246 Pac. 773, at page 779, where this court said, "And color of title is that which is title in appearance, but not in reality." See also Sullivan v. Neel, 105 Mont. 253, 73 Pac. (2d) 206, citing the above cases with approval.

In Horsky v. McKennan, 53 Mont. 50, 63, 162 Pac. 376, 380, this court said: "While these deeds, being void on their face, were ineffectual to constitute title, they were evidence of a

claim of title ample to sustain a possessio pedis (Morrison v. Linn, 50 Mont. 396, 147 Pac. 166), if not, as some authorities insist, color of title sufficient, under general statutes of limitation, to support adverse possession of the lands adequately described.''

The majority opinion states that ''a description of the land is necessary in an instrument relied on as color of title.'' If this statement means that the description of the land must be full, accurate and precise to operate as ''color of title,'' then such statement is most inaccurate.

In Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 650, the court said: ''The law does not require that a deed, to support the *prescription* of 10 years, shall contain such a description that the land can be identified *without reference to other records.*'' (Emphasis supplied.) See also Toerner v. Texas Co., 5 Cir., 70 F. 2d 239, holding a deed was sufficient to support a plea of prescription of ten years though there were slight errors in running lines and the surveyor was mistaken in locating the land to conform to deed. Also see Dame v. Fernald, 86 N. H. 468, 171 A. 369.

In Garcia v. Pineda, 33 N. M. 651, 275 P. 370, a description reading as follows, ''First, on the south side a courtyard of ten varas; on the east seven and a half varas; on the north three varas; and west to the line which is the old public wagon road'' (the Spanish word ''vara'' means about 2.8 feet in length), was held sufficient to identify the land and establish adverse possession. See also Crider v. Woodward, 162 Ga. 743, 135 S. E. 95.

In Tryon v. Huntoon, 67 Cal. 325, 7 Pac. 741, 743, the description in a deed was ''Three fractions of lot 7, J and K, Fourth and Fifth streets, Sacramento city.'' In construing this deed the court said, ''This deed is void for uncertainty of description, and no title vested in the grantee * * *. (Citing cases.) It seems, however, that the grantee under the deed entered into possession, conveyed by deed in due form to one S. S. Crane, in 1854, under whom, by sundry mesne convey-

ances, plaintiff claims title. The deed was sufficient to give *color of title,* and possession under it for 30 years and upwards by plaintiff and her grantors, claiming title, is sufficient to give a perfect title under the statute of limitations.'' The above case is approved in Silvarer v. Hansen, 77 Cal. 579, 20 Pac. 136. See also Horsky v. McKennan, supra; Bruch v. Benedict, Wyo., 165 Pac. (2d) 561; Sharp v. Shenandoah Furnace Co., 100 Va. 27, 40 S. E. 103; 2 C. J. S., Adverse Possession, secs. 64, 72 (4); 18 C. J., secs. 61 and 62, page 179; 26 C. J. S., Deeds, secs. 29, 30.

The above authorities construing ''color of title'' in support of claims under adverse possession apply with equal force to claims for offsets in actions under section 9491, Revised Codes, supra. See, Huse v. Den, 85 Cal. 390, 24 Pac. 790, 20 Am. St. Rep. 232; Kinard v. Kaelin, 22 Cal. App. 383, 134 Pac. 370, at page 373, construing a section the same as 9491, Revised Codes 1935.

Under the authorities cited above on ''color of title'' it is clear that the tax deed to Beim and his quitclaim deed to respondent sufficiently identified the land to show that respondent held the same in good faith under color of title, and giving him the right to compensation for improvements placed thereon after he acquired the land. See 31 C. J., section 27, page 319 and sections 40 to 44, page 328; also 42 C. J. S., Improvements, secs. 5 to 7.

The description given in the tax deed and in the quitclaim deed was sufficient to accurately identify all the land within the lines run from the four corners given and to also suggest that an examination of the records would show the manifest error in the description. The description given was sufficient to show that respondent was holding the land so described under color of title. See Leader Realty Co. v. Taylor, supra. Such was the correct conclusion of the trial court where, after citing a number of cases, it said: ''I believe I will hold that the defendant corporation took under color of title in good faith and that the provisions of section 9491 are applicable.''

Such holding conforms with the facts determined and the law applicable thereto stated by this court on the two former appeals. Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co., supra.

"It is in the interest of the community that stability and repose of titles to real property should be maintained and that they should not be upset on mere technicalities. This proposition is applicable to tax titles. The grantee in a tax deed is no mere purchaser of a law suit. His title is worthy of as much respect as a title derived from a grant of any other type. If the proceedings on which the tax sale is predicated substantially comply with the statutory directions, the courts should not be astute to search for technical grounds on which to set aside the conveyance." Deming v. Turner, D. C., 63 F. Supp. 220, 223.

I have heretofore set forth, somewhat in detail, the pleadings on which the parties hereto went to trial. Under Elijah v. Wright, 52 Mont. 438, 158 Pac. 475, the plaintiff's complaint fails to state a cause of action. As stated in the majority opinion, the measure of damages for the wrongful occupation of real property is that provided in section 8687, Revised Codes of Montana of 1935. There is no authority for plaintiff's attempt to collect one cent per gallon for each gallon of gasoline, distillate, kerosene and lubricating oil sold and dispensed and one cent per pound for all greases sold and dispensed from the occupied premises.

The district court properly excluded offered testimony tending to show the amount of business done by the defendant while occupying the premises. Thereafter, over defendant's objections, and without amending or offering to amend the complaint, the president of the plaintiff company was permitted to testify as to the reasonable rental value of the property in the condition it was in when the defendant entered into possession. There is no allegation in plaintiff's pleadings that the premises had a monthly rental value in any sum or amount. In my opinion the issues as framed by the pleadings herein did not warrant the admission of such testimony. In effect

plaintiff gambled on the law governing the measure of damages being as it had pleaded and it lost. Appellant may not be permitted to change its theory on appeal.

The district judge suggested that he would permit the plaintiff to amend its pleadings but plaintiff declined to amend, whereupon the district court granted the motion of the defendant Farmers Co-operative Oil and Supply Company for nonsuit. Under such circumstances the judgment of nonsuit was proper and should be affirmed for under its pleadings and the proof admissible thereunder, the plaintiff Pritchard Petroleum Company failed to make out a case entitling it to any relief whatever.

The case was tried on plaintiff's own theory. The questions of law and fact were correctly decided by the trial court and since its rulings and determination were the only ones permissible under the law and facts its judgment should be affirmed and the litigation thus be brought to an end.