Decided 30 April, 1898.

## FIRST NAT. BANK v. HOME INS. CO.

[52 Pac. 1055]

TRIAL—POWER OF COURT TO CONTROL TESTIMONY.—Under the general power to control the conduct of a case a judge may *sua sponte* withdraw improper testimony from consideration by the jury, or may limit its application, particularly where counsel were notified on offering the testimony that such a ruling might be made at the conclusion of the trial.

From Multnomah :    ALFRED F. SEARS, Judge.

Action by the First National Bank of Portland against the Home Insurance Company, in which plaintiff recovered.

                                        AFFIRMED.

For appellant there was a brief over the name of *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. William W. Cotton.*

For respondent there was a brief over the names of *Henry E. McGinn*, and *Dolph, Mallory & Simon*, with an oral argument by *Mr. McGinn.*

MR. JUSTICE WOLVERTON delivered the opinion.

The action in this case is to recover upon three policies of insurance against loss or damage by fire, which were concurrent with the policies sued on in *First National Bank of Portland* v. *Commercial Union Assurance Co.* and *Same* v. *Phœnix Assurance Co.* (just decided). This case was tried before the others, but the issues presented by the pleadings are identical. Two questions are raised here, one of which is settled by the opinion in those cases. The other we will now dispose of.

One Henry Jacobs was called by the defendant as a witness in its behalf, and was asked whether he had not made a certain supposed statement in the presence of certain parties, at a given time and place, which he denied. Thereafter it called Louis Prager, and put to him the following question : '' State if, on the twenty-first day of October last, in your store, in the city of Portland, you and Jacobs being together, you had a conversation with Jacobs in regard to the Wolf fire, in which Jacobs said he had applied a compound of alchohol and arsenic and some other material to the goods in the store of H. Wolf & Brother ; that there was a scheme to set it off that night about twelve or half past twelve o'clock ; that it was set by a candle which had been so arranged or fixed as that it would burn down and come in contact with the inflammable material about that time of night ;

that Marcus Wolf fixed the candle, and he must have
been nervous, and tipped it over, or something to that
effect ; and that the fire went off sooner than was in-
tended ; and that Jacobs was procured to do this job by
H. Wolf and Marcus Wolf — or words to that effect."
Counsel for plaintiff interposed an objection, which, on
being sustained by the court, was immediately withdrawn,
and witness answered ".Yes." In the course of the
cross-examination the following colloquy took place be-
tween the court and the attorneys for plaintiff : "The
Court : It has occurred to me that it would not be im-
proper for me to exclude all this testimony. It is entirely
immaterial, and I do not see but that I shall be compelled
to instruct the jury that it will be considered for no pur-
pose whatever, except as impeaching the witness Jacobs.
I may decide to strike this matter out of the case entirely.
Judge McGinn : I agree with your honor that it is en-
tirely immaterial, but I do not want one thing in the
world kept from the jury. I want them to know that man
(pointing to the witness) and his heart when they pass
upon the issues in this case. It is a very material mat-
ter. I want this man's feelings to come before this jury
when they pass judgment upon Mr. Wolf and his children.
I want to show his relations with Jacobs. I want to
show to the jury the feelings of this man towards Mr.
Wolf. I want everything that he can say brought before
this jury, in order that his heart — his wolfish spirit —
may come before this jury when they give in their judg-
ment. There sits the man who caused that stock to be
burned, and I will prove it before this case ends. The
Court : You may complete your examination." Other
witnesses were produced, who testified to the same pur-
port. When the case was submitted to the jury, the
court withdrew the evidence as indicated, except as it
might operate in the impeachment of the witness Jacobs.

It is urged that since the court had permitted the testimony to remain in the case with a full appreciation of its character, and had allowed counsel for plaintiff to make use of it for the purpose of building up a theory before the jury to the effect that Prager had burned the store, instead of the Wolfs, as alleged by the defendant, it was error for the court *sua sponte* to withdraw the testimony from the consideration of the jury at the last moment.

The testimony which was sought to be, and which was, adduced through the witness, as referred to, was admittedly subject to the objections taken to its introduction ; and, if authority was wanted, the case of *State v. Steeves*, 29 Or. 103 ( 43 Pac. 947 ), is in point. But the objection was withdrawn, and thenceforth not insisted upon by counsel for plaintiff. However, upon cross-examination of the witness, the court of its own accord took occasion to notify counsel, as it was perfectly proper for it to do, that it would be compelled to instruct the jury that the evidence should not be considered for any purpose except as impeaching the witness Jacobs, and thereupon followed the comment of Judge McGinn. It does not appear whether counsel made any use of this testimony in presenting the case to the jury on final argument. When the court came to instruct, the objectionable testimony was withdrawn without any motion or request of plaintiff. The authorities seem to be uniform that a party who has permitted incompetent or irrelevant testimony to go to the jury without seasonable objection will not be entitled as of right to have it withdrawn by instructions when the case is ripe for the jury. There are two reasons which give support to the rule : One is that a party will not be permitted to lie by when a witness is called against him, and speculate upon the chances, and, when he finds the testimony to be unsatisfactory or has received and used it himself, to ask for its

withdrawal. He thus makes a law unto himself, and must abide by it. *Quin* v. *Loyd,* 41 N. Y. 349 ; *Rees* v. *Livingston,* 41 Pa. St. 113 ; *Farmers' Nat. Bank* v. *Greene,* 20 C. C. A. 500 ( 74 Fed. 439 ) ; *McInroy* v. *Dyer,* 47 Pa. St. 118 ; *Coombs Commission Co.* v. *Block,* 130 Mo. 668–683 ( 32 S. W. 1139 ) ; *Rundell* v. *Butler,* 10 Wend. 119. The other, by not insisting upon the rejection of the objectionable testimony, the opposing party might have been misled into a reliance upon it, whereas he might otherwise have produced other and better evidence in support of his case. *Becker* v. *Becker,* 45 Iowa, 239 ; *Porter* v. *Gile,* 44 Vt. 520. But, notwithstanding this well-settled rule, the court has the general direction and control of the trial of a cause, and, by virtue thereof, may *sua sponte* prevent the introduction of improper evidence, or, if introduced without objection, may seasonably withdraw it, to prevent confusion in the minds of the jury by the consideration of irrelevant matter ; and the only question here is whether the court has, in the exercise of its powers in the general direction of the trial, exercised them to the legal prejudice of the appellant. There was timely notice that the court would withdraw the objectionable testimony except for the purpose of impeachment. After this, other testimony was introduced of the same nature, part of which was objected to at first, then objection withdrawn, and part without objection ; so that both parties had notice of the court's intention to unburden the case of this objectionable matter, which notice was kept good when the case was submitted to the jury. Neither of the reasons for the rule above alluded to can apply here, and it is not apparent that the jury was misled by the voluntary action of the court, to the prejudice of appellant. The judgment of the court below will therefore be affirmed.

Affirmed.