## PAINE et al. v. ST. PAUL UNION STOCK-YARDS CO.

Circuit Court of Appeals, Eighth Circuit.
October 2, 1928.

No. 7653.

Thomas D. O'Brien and Edward S. Stringer, both of St. Paul, Minn. (Alexander E. Horn, of St. Paul, Minn., and Sullivan & Cromwell, of New York City, on the brief), for plaintiffs in error.

D. L. Grannis, of South St. Paul, Minn. (Frank L. Horton, of Chicago, Ill., on the brief), for defendant in error.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

OTIS, District Judge. Plaintiffs in error will be referred to herein as defendants and the defendant in error as plaintiff in accordance with their designations in the District Court.

Plaintiff is a Minnesota corporation. Defendants are copartners engaged in Minnesota and elsewhere in the business of buying and selling stocks and bonds and other securities on commission. For the plaintiff. one James M. Lindsay, in 1923 and prior thereto, was treasurer. and as such had sole access to a safety deposit box containing securities belonging to plaintiff. Without authority and with criminal intent on his part he abstracted from this box United States government bonds belonging to the plaintiff of the par value of $48,000. The bonds were payable to bearer, and were not registered. Representing to the defendants that these bonds were his, Lindsay deposited them with the defendants as collateral security for the purchase price of various stocks and bonds which he directed defendants to buy for him. Subsequently the state of his account with defendants was such that he caused them to sell the bonds and to credit him with the proceeds. That they did. Later the theft committed by Lindsay was discovered by plaintiff, and thereafter this action was instituted to recover from the defendants the value of the bonds that they had sold and that on the theory that they had been taken and converted by the defendants to their own use to the plaintiff's damage. Of five causes of action stated in the plaintiff's petition, this was the first. Reference need not be made to the others, beyond saying that, as to the second and third causes of action, they were dismissed by the court, and as to the fourth and fifth causes of action judgment was for the defendants.

The case was tried to a jury, but at the close of all of the testimony both the plaintiffs and defendant filed motions for directed verdicts, whereupon the case rightly was taken from the jury by the court and the issues of fact and law determined by the court. Beuttell v. Magone, 157 U. S. 154, 157, 15 S. Ct. 566, 39 L. Ed. 654; Anderson v. Messenger (C. C. A.) 158 F. 250, 253; Swift & Co. v. Columbia Ry., Gas & Electric Co. (C. C. A.) 17 F.(2d) 46, 49, 51 A. L. R. 983. Among other findings of fact made by the court were the following:

That previous to the 15th day of February, 1922, and at such time the plaintiff was the owner of and entitled to the immediate possession of negotiable United States government bonds of the par value of $48,000 and of the actual value on the said 15th day of February, 1922, of $47,024.02.

That before the said 15th day of February, 1922, said United States government bonds were stolen from the plaintiff by one James M. Lindsay.

That previous to the 15th day of February, 1922, defendants received said United States government bonds from the said Lindsay and on said date converted the said United States government bonds to their own use, all to plaintiff's damage in the amount of $47,024.02, no part of which has been paid.

That the said United States government bonds were received by defendants from the said James M. Lindsay under circumstances of a suspicious nature, but not so suspicious as to show in themselves that defendants acted in bad faith. That defendants dealt with the bonds in good faith.

That said United States government bonds were delivered to defendants by said James M. Lindsay as collateral security for the purchase price of stocks and bonds which he ordered purchased by defendants on margin, and he understood that said purchases were to be real and actual, and did not consent to do business in any other way.

That the stocks and bonds so ordered by Lindsay were not in fact purchased for or delivered to Lindsay by defendants.

That defendants did not give value. for the said United States government bonds.

The principal controversy revolves about the two last-mentioned findings of fact and the legal conclusion resting thereon.

The testimony clearly established that the bonds were stolen from the plaintiff by Lindsay; that they were delivered by him to the defendants as his own property and in good faith so received from him by the defendants. There is no question but that the plaintiff is not entitled to recover from the defendants if they gave Lindsay value for the bonds received from him. There is no question that, if the defendants purchased the stocks and bonds ordered by Lindsay and in connection with which order the bonds were deposited as collateral security, then the defendants did give value. As to whether they gave value, the burden of proof was on them. Minnesota Uniform Negotiable Instrument Act, Laws of Minn. 1913, c. 272, §§ 59, 55, 51; Crittenden v. Widrevitz (C. C. A.) 272 F. 871, 872.

Upon this issue the testimony of Lindsay was:

"Q. Have you any recollection as to the total market value of the securities held by Paine-Webber on your account, and which

had been purchased by them on your account in November, 1920?

"Mr. Grannis: We object to the question on the ground that it assumes something not in evidence. He assumes that the stock was purchased. There is no evidence here that this stock was purchased for Mr. Lindsay. He said he didn't receive, and that question assumes that there was stock purchased.

"The Court: Overruled.

*  *  *  *  *  *  *  *  *

"A. Oh, I assume it was around fifty or sixty or seventy-five thousand dollars.

*  *  *  *  *  *  *  *  *

"Q. Do you mean at that time the securities which Paine, Webber & Co. were carrying for you were, at the market value, about equal to your indebtedness to Paine, Webber? A. I guess that would be it.

*  *  *  *  *  *  *  *  *

"Q. On the 15th of February, 1922, have you any independent recollection as to the market value of the securities then held by Paine, Webber & Co. and which they had purchased upon your account? A. No, I can't say with any degree of accuracy. It is only a matter of memory.

*  *  *  *  *  *  *  *  *

"The Court: They sent you a statement of your account from time to time?

"The Witness: I got a notice of each individual transaction, and at the end of every month I got a summary of the whole.

"The Court: You say in February, 1922, you think your debit balance was something like $48,000?

"The Witness: I believe that was the amount.

"The Court: That is, you owed them on all accounts that amount?

"The Witness: Yes, sir.

"The Court: And they held stocks which represented part of that indebtedness?

"The Witness: Yes, sir; I believe the amount was $45,000, my debit balance.

"The Court: $45,000?

"The Witness: Yes.

"The Court: For that they had in part at least the stocks?

"The Witness: The stocks and bonds, about $48,000.

"The Court: Stocks and bonds about $48,000?

"The Witness: Yes, sir.

"The Court: So that if you had closed out on that day you would have had about $3,000 coming to you?

"The Witness: That is right.

"The Court: But they had in addition to that these bonds which they held as collateral?

"The Witness: No, sir; the Liberty bonds was the $48,000 that I referred to.

"The Court: Well, did they not hold any of the stocks or bonds which you had purchased and for which this indebtedness was contracted?

"The Witness: I don't think I had any at that time; I think I had pretty near sold them all out; the only thing I had in the account at that time was the $48,000, the Liberty bonds deposited as collateral, the debit balance around $45,000.

"The Court: If your memory is right, they held nothing of yours, and nothing which had been bought for you, except these $48,000 of Liberty bonds which had been deposited as collateral?

"The Witness: That is all. Possibly there might have been one or two small lots of stock unsold.

"The Court: At that time you directed them to sell these $48,000 of Liberty bonds?

"The Witness: Yes, sir.

*  *  *  *  *  *  *  *  *

"The Court: You have said that in one or two instances only that you did actually have possession of stocks or bonds which the defendant bought for you?

"The Witness: Yes, sir.

*  *  *  *  *  *  *  *  *

"The Court: You did not actually know whether they had made the purchases or not?

"The Witness: No; but I believed they did. I wouldn't see them anyway.

"The Court: That is, in the regular course of business you wouldn't see them?

"The Witness: No, sir."

Upon the same issue the testimony of the local manager for the defendants, one Samuel E. Byrne, was:

"Q. What was done by Paine, Webber & Co. with reference to his order to purchase 50 shares of Swift's stock? A. We transmitted it to our Chicago office.

"Q. State whether or not the stock was purchased? A. The stock was purchased."

To this testimony plaintiff objected and moved that it be stricken out on the ground that the witness, being at St. Paul, could not have personal knowledge of whether stocks were purchased at Chicago or elsewhere. The objection and motion were overruled. Byrne further testified:

"Q. Now you say that the stock was purchased upon the Chicago market? A. Yes, sir.

"Q. Why do you say that? A. Well, he transmitted the order to Chicago, and Chicago reported the purchase to us.

"Mr. Grannis: I move to strike out the answer.

\* \* \* \* \* \* \* \* \*

"The Court: For the present let the motion be denied.

"Q. Are you entirely familiar with the method of transacting business by Paine, Webber & Co.? A. Yes, sir.

"Q. How long have you been with that company? A. Nearly 27 years.

"Q. State whether or not that company operates its branch offices throughout the United States? A. Well, various cities.

"Q. In various cities in the United States? A. Yes, sir.

"Q. And state whether or not in this matter you followed the ordinary and usual course of business in transmitting this order? A. Yes, sir.

"Q. Did you receive a report in the ordinary and usual course of business that the stock was purchased? A. Yes, sir.

"Q. And, based upon your knowledge of the methods of business as pursued by Paine, Webber & Co., you stated that the stock was purchased, relying upon that report that you received?

"Mr. Grannis: That is objected to as incompetent, irrelevant, and immaterial, and no foundation laid. I would like to have our objection stand on all this.

"The Court: It may so stand. Objection overruled.

"Q. Was there anything different in this transaction from the regular and ordinary purchase of stock or bonds, upon orders of your customers? A. No, sir."

The plaintiff again moved to strike out this testimony; the court answering: "Well, the motion may be denied for the present, anyway."

Bryne then testified as to other purchases made for Lindsay and that defendants' books, kept in regular course, showed the orders from Lindsay and purchases made for him by the defendants.

At no time during the trial was any of this testimony stricken out nor was objection sustained to any part of it. To some substantial parts of it there was no objection made.

There was no other testimony tending to show that the stocks and bonds ordered by Lindsay were purchased by the defendants and no testimony whatever was offered by the plaintiff tending to show that no stocks and bonds were in fact purchased by the defendants for Lindsay. The defendants did not undertake to introduce the testimony of witnesses having actual personal knowledge of the purchases of stocks, bonds, and other securities for Lindsay.

It was from the evidence in this condition that the trial court found that stocks and bonds ordered by Lindsay were not in fact purchased and that the defendant did not give value for the United States government bonds put up with them by Lindsay. In that connection the trial court in its memorandum opinion said:

"One of the two necessary facts for defendants to prove was that they actually bought and sold the commodities which were the subject of the transactions between them and Lindsay. Knowing the great importance of this point, and that the only evidence thereof was in their own hands, their failure to meet it by direct proof is quite persuasive that the truth if disclosed would be against them, and overcomes any prima facie effect which a reference to the books of account may have had. Without doubt, there are living witnesses who can testify directly to the facts. They have not been produced. Under such circumstances, the book evidence we have had is of negligible value. Mr. Byrne in form testified that the stocks and bonds had been purchased, but he claimed no actual knowledge of the facts and had none. The evidence will not warrant a finding that defendants paid value for the bonds."

Following the judgment, the defendants filed a motion for a new trial, alleging, among other things, that the actual truth was that the stocks and bonds ordered by Lindsay had in fact been purchased; that that could be proved by direct testimony; that it was not proved by direct testimony at the trial, for the reason that the defendants believed the showing made by them in that connection was sufficient in the absence of contrary proof and when the court had ruled favorably as to the competency of the evidence introduced. Affidavits were filed with the motion which, if the statements therein contained were true, convincingly established that the stocks and bonds ordered by Lindsay were in fact purchased for him. This motion for a new trial was overruled, the court saying, in a memorandum opinion filed with the order overruling the motion:

"This is a motion for a new trial on various grounds. These narrow down to the question of whether or not defendants should be granted such new trial for the purpose of enabling them to adduce evidence of which they had knowledge at the time of the trial, but which was not offered thereat. If a new trial should be had and this evidence be admitted, and be believed by the trier of facts,

whether court or jury, it would doubtless result in a substantial modification of the decision which has been made in the case.

"Speaking generally, an order granting or denying a motion for a new trial in the federal court is discretionary with the trial court, and is not reviewable on writ of error, or on appeal. Holmgren v. United States, 217 U. S. 509, 521, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Clyde Mattox v. United States, 146 U. S. 140, 147, 13 S. Ct. 50, 36 L. Ed. 917.

"The action of the court, however, must not be arbitrary. It may not grant a new trial merely because one of the parties so desires, or for reasons which are not recognized as legitimate grounds for such action. The court should keep within well-recognized rules in dealing with such a motion. Otherwise there is an abuse of discretion, and in such cases, very properly, a review may be had. United Press Association v. National Newspapers Association (C. C. A.) 254 F. 284 (8th Circ.); Yeates v. United States (C. C. A.) 254 F. 60; Vallery v. Glenwood Irr. Co. (C. C. A.) 248 F. 483 (8th Circ.).

"By section 726, Revised Statutes (section 1246, Compiled Statutes 1918; 28 USCA § 391), this court is given power to grant new trials in cases where there has been a trial by jury 'for reasons for which new trials have usually been granted in the courts of law.'

"Diligent search does not reveal a case where new trial has been granted under such circumstances as those here involved, and the court is inclined to the view that, however desirable it might be in this case to grant the motion, such action by the court would not be in harmony with long-established rules. Defendants had made no preparation to introduce the necessary evidence at the trial.

"The court is of the opinion that it has no power or right to grant a new trial under the circumstances here involved, and makes this statement so that defendants may have the benefit, if any, thereof, on review."

The defendants now contend that this memorandum indicates that the trial court refused to exercise his discretion to grant a new trial, and that for that reason the case should be remanded, with directions that he do exercise his discretion in this regard.

■ 1. The granting of a new trial is generally speaking within the discretion of the trial judge, and, unless that discretion patently has been abused, his ruling on a motion for a new trial is not subject to review. Mattox v. United States, 146 U. S. 140, 147, 13 S. Ct. 50, 36 L. Ed. 917; Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085; Holmgren v. United States, 217 U. S. 509, 521, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778. He cannot, of course, refuse to exercise his discretion, and, if he does so refuse, then that is a matter for the examination of the Court of Appeals. Felton v. Spiro (C. C. A.) 78 F. 576, 579; Mattox v. United States, 146 U. S. 140, 147, 13 S. Ct. 50, 36 L. Ed. 917; Ogden v. United States (C. C. A.) 112 F. 523, 525. It is not our view, however, that in this case the trial court refused to exercise its discretion.

■ The language in the memorandum of the trial court to which the plaintiff points in this connection is the concluding paragraph thereof, wherein the trial court said that in its opinion "it has no power or right to grant a new trial under the circumstances here involved." Clearly, however, the trial court by that language did not mean to intimate that absolutely it did not have the power to grant a new trial. What was meant was that in its opinion, under the facts and circumstances present, a new trial should not be granted. Perhaps the learned trial judge might have reached a different conclusion, and indeed it appears that he would have liked so to have done. But he did exercise his discretion, and his action is not to be reviewed here.

■ 2. We think, however, that there was no substantial evidence supporting the trial court's finding of fact that stocks and bonds ordered by Lindsay were not purchased for him by the defendants and that the defendants did not give value for the bonds delivered to them. Such a finding of fact is not for review here, if it is supported by any substantial evidence. Runkle v. Burnham, 153 U. S. 216, 225, 14 S. Ct. 837, 38 L. Ed. 694. Here the only evidence pointed to a contrary conclusion than that reached. To some of it when offered there was no objection. If that evidence was not competent, it was nevertheless received and the case submitted with that evidence in. It was vital to the defense. If after the submission of the case and when it was under advisement the trial judge concluded that it was not competent, on his own motion he should have reopened the case to give the defendants an opportunity to present competent evidence. They would have had that opportunity had this testimony been excluded at the trial. To exclude it after the conclusion of the trial, when there was no longer any opportunity to supply the omission, was to make possible a serious miscarriage of justice, and was error. 23 Corpus Juris, 39, § 1783; Sherwood v. Sissa, 5 Nev. 349; First National Bank

v. Home Ins. Co., 33 Or. 234, 52 P. 1055; Porter v. Gile, 44 Vt. 520; Becker v. Becker, 45 Iowa, 239; Metropolitan Music Co. v. Shirley, 98 Minn. 292, 108 N. W. 271.

Entirely apart moreover. from the question as to whether there was evidence that defendants made actual purchases for Lindsay upon his orders, we think the record shows he received value.

The case must be reversed and remanded for a new trial. It is so ordered.

VAN VALKENBURGH, Circuit Judge (concurring). I concur in the conclusion reached by Judge OTIS upon the ground stated. I am further of opinion upon the special facts of the case, and the convincing nature of the evidence tendered by the motion for new trial, as conceded by the trial judge in his memorandum opinion denying that motion, that this action of the court comes within the principle announced by Judge (now Chief Justice) Taft in Felton v. Spiro (C. C. A.) 78 F. 579–583, by the Circuit Court of Appeals of the Fourth Circuit in Norton v. City Bank & Trust Co., 294 F. 839, and by the Supreme Court in Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917. Here the trial judge exercised no discretion upon the merits of the motion for new trial, but overruled it because he conceived he had no power to grant it. That the court has such power to prevent a failure of justice must be conceded. The case therefore presents an exception to the general rule announced by this court in Taylor v. United States, 19 F.(2d) 813, and I think the refusal to grant the motion may be reviewed and corrected here.