WHEATLAND IRRIGATION DISTRICT,
a corporation, Appellant
(Defendant below),

v.

Bernard R. McGUIRE et al., Appellees
(Plaintiffs below),

and

Dean T. Prosser, Jr., and Harriot Prosser,
Appellees (Plaintiffs below).

No. 4353.

Supreme Court of Wyoming.

March 17, 1977.

William R. Jones and Raymond B. Hunkins, of Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

John J. Rooney, of Rooney, Horiskey, Bagley & Hickey, Cheyenne, for appellees McGuires.

Glenn Parker, of Hirst & Applegate, Cheyenne, for appellees Prossers.

Before GUTHRIE, C. J., McCLINTOCK and ROSE, JJ., and BROWN and HAMM, District Judges.

McCLINTOCK, Justice.

The McGuires and Prossers recovered substantial judgments in separate actions filed against the Wheatland Irrigation District to recover damages for injuries to lands and personal property belonging to the two families, which injuries occurred when the dam of a reservoir owned by defendant gave way, resulting in the flooding of plaintiffs' lands. Defendant appealed, asserting error both in the imposition of liability as a matter of law by the trial judge and in the assessment of damages by a jury. Our first opinion[1] held that the trial court committed error in imposing liability as a matter of law and confining the jury trial to the issue of damages but did not discuss defendant's contentions with respect to damages. Petitions for rehearing were then filed by plaintiffs, asserting error in our reversal of the liability issue, but also suggesting that the cause should be remanded only for trial of that issue, leaving intact the jury verdict as to damages. We denied rehearing on the issue of liability but ordered reargument before a full court on all questions relating to damages.[2]

■ Our order granting reargument upon the desirability of a limited retrial upon the liability issue alone refers to the general rule permitting such retrial when " 'it is clear that such a course can be pursued without confusion, inconvenience,

or prejudice to the rights of any party.' Annot. 34 A.L.R.2d 988, 990."[3] Such a procedure is consistent with our Rule 42(b), W.R.C.P. permitting separate trials of claims or issues in the first instance. We think it is also consistent with our Rule 59(a), W.R.C.P., permitting a new trial "on all or part of the issues" and agree with the observation of the Supreme Court of Alaska in *City of Fairbanks v. Nesbett*, 432 P.2d 607, 613 (1967) pertinent to its Civil Rule 59(a)—essentially the same as ours—that while the rule pertains to authority of the trial courts, "this court possesses equivalent authority to order a partial new trial upon remand." That case presented the other side of the coin in that it held the liability issues were distinct from the damage issues, that the former had been properly decided and a limited retrial on damages would not "result in an injustice to appellant." Such an order "for the restriction of the issues will never be made unless the court can clearly see that this is the way of doing justice in that case," *Murray v. Krenz*, 94 Conn. 503, 109 A. 859, 861 (1920). This court, in construing former § 89–4803, W.R.S. 1931,[4] providing that this court could direct a case to be retried on all or part of the issues, said that "[w]hether that course should be followed is a matter within the sound discretion of the court." *F. E. Warren Mercantile Co. v. Myers*, 48 Wyo. 232, 237, 45 P.2d 5, 6 (1935). We therefore have no doubt as to our authority to order a retrial upon the liability issue alone.

■ We think it only proper that the question whether injustice and prejudice would result from a limited retrial be determined under the usual rules of appellate review and if there has been a reasonably errorless trial upon the question of damages, that issue should not be retried merely to permit objections and defenses that were

---

1. *Wheatland Irrigation District v. McGuire*, 537 P.2d 1128 (Wyo.1975).

2. Id., 552 P.2d 1115. Justices Raper and Thomas had recused themselves from consideration of the original cause, took no part in the decision to grant reargument and District Judges Brown and Hamm were called in to participate

in the reargument concerning further disposition.

3. Id., 552 P.2d at 1116.

4. Section 3–5303, C.S. 1945. Rule 87, W.R.C.P. The rules contain no similar provision.

not raised upon the first trial.[5] The extent and amount of damages were vigorously contested by defendant in the trial court and it now assigns numerous errors respecting the trial of that issue. We have carefully examined the record and now determine that while objections of the defendant left much to be desired and in some instances were completely lacking, there were sufficient errors committed over defendant's objections that to confine the new trial to the issue of liability alone would result in injustice. In view of the fact that we are remanding the matter for new trial we shall consider errors claimed by defendant as to the first trial in the hope that it will aid in the retrial. See *Chicago and Northwestern Railway Company v. City of Riverton*, 70 Wyo. 84, 119, 247 P.2d 660 (1952), denying petition for rehearing.

The damages claimed to have been suffered by the McGuires and the Prossers were asserted in separate actions consolidated for purpose of trial. Both complaints are quite general in terms, alleging only that because of defendant's improper acts the plaintiffs' lands were flooded and great damage done, both to the land itself and to crops, residences and other property. No defense of nonjoinder of necessary or proper parties was raised by defendant by the pleadings,[6] objection at the pretrial or through other preliminary motion, but during the course of the trial it was claimed that any injuries established by either group were in material part to the interests of other members of the McGuire family or the Prossers' family corporation, not parties plaintiff in the action, and it is now claimed that the jury could not and did not find the portion of such damages attributable to the ownership interest of the parties to the suit. Defendant also attacks both the McGuire

and Prosser judgments on the basis that there was no adequate or proper proof at the trial from which the jury could properly award damages, so that the verdict is the result of surmise, speculation and conjecture.

To place these objections in proper perspective we first examine the manner in which the two families operate. The McGuire plaintiffs, probably in husband and wife combinations, are the separate owners of distinct parcels of land within the area of damage. Two other members of the family, possibly in combination with their wives, own other distinct tracts outside this area. Only those lands in which parties to the action Bernard (the father), and Tom and Pat (two of the sons) had some ownership were damaged by the flood, but those lands, together with lands owned by nonparty members of the family, are combined into what is frequently described as one ranching unit comprising some 13,000 acres of deeded land. The ranching operation, which consists of the breeding, care and marketing of livestock, principally cattle, is conducted on all of these lands under a loose family arrangement, neither a corporation, nor a partnership or other formal association, and involves the use of all the lands and all of the appropriate machinery and equipment owned by the family. As testified to by Tom McGuire, one of the principal witnesses for his family, title to "all this land" is "mixed up amongst us.[7] We are all in it together. * * * We mix our cattle up and if one guy has a pickup everybody can use it. * * * The machinery is all together." The family members do not attempt to distinguish as to whose land they may be working on. Feed is all mixed up. Newly purchased property will be in a certain name "but we run our cattle on any-

---

5. Failure to object at time evidence is offered waives any objection thereto. *Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 976 (Wyo. 1974); a rule of evidence not invoked is waived, *McClure v. Latta*, 348 P.2d 1057, 1060 (Wyo.1960).

6. This appears a very proper omission in view of the fact that defendant could not have known at that time that other members of the

family were involved in ownership of the property.

7. We take this to refer to the father, mother, brothers, and spouses, and possibly a sister, not a party to the action. The record ownership was not shown but we do not construe the testimony as intended to establish a group ownership of the land.

thing." The family buys it together, "kind of." At least each male member of the family has his own brand, and individual income tax returns are filed, "but if one guy gets going behind a little or something the rest of us will help him out." There was no individual breakdown of ownership of personal property and the witness spoke of machinery as "family property."

The lands owned by Mr. and Mrs. Prosser were orally leased to Chalk Bluffs Ranch, Inc., a corporation in which they have substantial interests and which is managed by their son. The corporation pays a fixed rental of $6,000 per year to the Prossers [8] and the corporation owns all machinery, puts up the hay, maintains the fences and buildings, and assumes all expenses in connection with the livestock operation. Many items of restoration expense incurred as a result of the flood were paid by check of the corporation but these payments are explained by Dean Prosser as being in the nature of loans to the Prossers.

Witnesses for both families testified at length as to the extent of the flood damage, the property lost or damaged, costs of clearing away rock, sand and debris and restoring the land, loss of use during the time that the property was being restored, and a great deal of testimony is devoted to what is termed permanent land damage. During the course of the testimony two large sheets of paper were placed on an easel before the jury and the damages of each family were listed under six main headings, denominated as washed-away items, machinery damage, loss of use, cleanup, farm yard expense, and permanent land damage. Claims so summarized totaled $314,373.90 for the McGuires [9] and $303,390.59 for the Prossers.[10] On the Prosser exhibit some of the six categories of damages were further broken down into smaller classifications and on both exhibits there were notations of the figure for depreciation or permanent land damage given by their common expert, McInerney, $100,000 in each case. Both these sheets were offered and received in evidence over the objection of the defendant.

We first consider defendant's contentions that there was no appropriate, adequate, or proper legal evidence or proof of damages presented from which the jury could have properly awarded damages, that improper testimony and irrelevant, immaterial, and confusing exhibits were prejudicially received into evidence over defendant's objections, and that "the record as a whole is so devoid of competent and relevant evidence on the issue of damages that the judgment for that reason, must be reversed."

█ Except for objections to the introduction of the two summaries there was a notable lack of objection during the course of the testimony. Thus Tom McGuire was permitted to testify to many matters involving the work and expense in restoring land and buildings to usable and habitable

---

8. From other testimony it appears that the rental might have been the payment of taxes and amounts due under a mortgage of the land itself. The exact amount of rent is not important to our disposition of the case.

9. We reproduce a portion of this summary, together with figures taken from the McGuires' brief:

| | | Orig. exh. | McGuire brief |
|---|---|---|---|
| "1. | Washed-away items | $ 23,321.40 | $ 16,121.40 |
| 2. | Machinery damage | 3,270.00 | 3,270.00 |
| 3. | Loss of use | 46,750 00 | 46,750.00 |
| 4. | Clean up | 46,032.50 | 46,032.50 |
| 5. | Farm yard expense | 20,000.00 | 20,000.00 |
| 6. | Permanent land damage | 175,000.00 | 5,125.00 |
| | | $314,373 90 | $137,298.90" |

The jury returned verdict for $137,298.90

10. The summary of amounts as claimed by the Prossers and as corrected during the testimony is as follows:

| 1. | Washed-away items | $ 2,528.55 |
|---|---|---|
| 2. | Machine damage | 1,350.00 |
| 3. | Loss of use | 90,000.00 |
| 4. | Cleanup and restoration | 177,572.84 |
| 5. | Farm yard expense | 8,939.20 |
| 6. | Permanent land damage | 23,000.00 |
| | | $303,390 59 |

conditions, cost of replacement machinery, work done by others and the value thereof, all without objection as to his qualifications, use of an improper measure of damages, reference to new costs instead of depreciated value, or that the evidence was improper for any other valid reason. A number of reasons were assigned in objecting to the introduction of the two exhibits summarizing plaintiffs' damages but as said in *Melinder v. United States*, 281 F.Supp. 451, 454–455 (D.C.W.D.Okl.1968), the

> " * * * summary itself is not evidence and in order that it may be admitted to consideration in the decision of the case, the facts which it summarizes must be in evidence, or available at the trial. * * * "

Objection to the summaries in this case did not go to the fundamental question as to whether the testimony which they summarized was proper. If objection is to be made to evidence, it should be to the testimony as to the fact, not to a summary of those facts.

■ Similarly, defendant's objection to instructions as to the measure of damages on the ground that "there is insufficient evidence of the value of any of the items of personal property introduced by any of the plaintiffs" was insufficient not only as an objection to the instructions but as an objection to the introduction of evidence. In *Henderson v. Coleman*, 19 Wyo. 183, 221, 115 P. 439, 449, rehearing denied 19 Wyo. 236, 115 P. 1136 (1911) no proper objection was made during the course of testimony concerning value, but the trial court was requested to exclude such evidence from jury consideration. This court affirmed the trial court's rejection of the request, saying:

> "According to the clear weight of authority, a party who has permitted incompetent or irrelevant evidence to be received without a seasonable objection is not entitled as of right to an instruction withdrawing it from the consideration of the jury. * * * "

■ As we see it, defendant, without stating "distinctly the matter to which he objects and the grounds of his objection" as required by Rule 51, W.R.C.P., by its objection to the instruction sought to take away from the jury consideration of these claims when, by its silence at the time the evidence was being presented, it had tacitly conceded the competency, materiality and relevance of the testimony. Such a procedure has been condemned for two reasons which this court in *Henderson*, 19 Wyo. at 221, 115 P. at 449, found to have been well stated in *First National Bank of Portland v. Home Insurance Co.*, 33 Or. 234, 52 P. 1055 (1898). One of these is that had defendant objected the plaintiff "might otherwise have produced other and better evidence in support of his case." 52 P. at 1056.

■ Objection was properly taken to evidence concerning the cost of rebuilding a reservoir belonging to the Prossers which had been wiped out by the flood. Because of the extent of the void created by the flood it was necessary to build a higher dam and much larger reservoir and the added size required the condemnation of adjacent lands. Objection was made to evidence concerning this expense on the grounds that it was not a proper expenditure, and even if so, it had not been specially pleaded. We can agree that such an item of expense is not such as normally results from the injury and it was therefore an item of special damage which under Rule 9(g), W.R.C.P. should have been specially pleaded. However, even if the defendant was surprised by the evidence at the trial (a highly unlikely possibility in view of the extended discovery proceedings prior to trial) it appears that the plaintiffs Prossers should be permitted to amend their pleading to allege this special item. Insofar as it is claimed that the new reservoir is bigger and therefore a better reservoir, thereby bettering plaintiffs' condition, we think the point is well taken, but the jury was, and we presume the next one will be, instructed that it should take such betterment into consideration. The Prossers, having the affirmative of the issue as to the extent of their damages, should present more clearcut evidence as to the extent and value of the betterment.

We do not consider the foregoing objections to raise any substantial questions and were they all that were involved in the appeal we would be inclined to affirm. However, much of defendant's argument centers around the items of permanent land damage and loss of use, considered particularly with reference to the absence of certain parties. These objections merit detailed consideration.

Valuations of the McGuire land before and after the flood were variously fixed by Tom, his father Bernard, and an expert testifying in their behalf. All of them referred to the total lands as a "unit" and the unit, prior to the flood, was considered adequate to maintain 1,000 animal units. Both Tom and his father considered that the carrying capacity of the overall unit had been considerably reduced by the flood injury and that even after the lands had been as well restored as possible, some four years after the flood, there would remain permanent injury and the whole unit could then carry only 825 to 850 animal units. The animal unit [11] was valued at $1,000, so on this basis Tom fixed the permanent loss at $175,000, and Bernard at $150,000. The expert McInerney compared the carrying capacity of the entire McGuire ranch immediately before the flood with what he referred to as its "stabilized," that is partially restored, condition at a time some four years after the flood, and also fixed his valuations on the basis of an animal unit value of $1,000. On this basis he arrived at a reduction in value of the overall ranch unit of $100,000. All of the lands which were damaged by the flood were owned by one of the three husband-and-wife combinations who were parties to the action. Following the same system of evaluating animal units that he used with respect to the McGuires, the expert McInerney likewise fixed the depreciation in value of the Prosser lands at $100,000.

If we correctly understand the defendant's argument on this phase of the case, it is that the two McGuires and their expert witness on valuation have put a before-and-after valuation on the entire ranch, included in which is land which belonged to or in which persons not party to the suit had an interest; therefore all these owners suffered from the diminution in value of that ranch; the damages are allowed for reduction of the whole value and therefore persons party to the suit have recovered for damages suffered by nonparties. Passing for the moment the failure of defendant to raise any question of nonjoinder of proper or necessary parties by preliminary objection, we think that with reference to the recovery of damages for injury to the ownership interest alone the point is without merit and that the evidence given was not designed to allow damages to plaintiffs for injuries suffered by nonparties. While the value of the animal unit was fixed by consideration of the whole operation, the loss of carrying capacity involved only lands owned by the plaintiffs and their capital contribution to the family venture has been thereby reduced. They as owners of that land have been injured in the diminished market value of their land, and what additional effect that loss may have on the profitability of the livestock operation conducted on those lands is of no consequence as to this phase of the case.

The basic weakness in defendant's position in this regard is its failure to distinguish between injuries to the land and the proper compensation to be awarded the owners thereof, and injuries to operations involving use of those lands, in whatever combination or under whatever arrangement, with the expectation of receiving a profit from the production of livestock. Injury to or even destruction of the plaintiffs' lands would not result in an injury to nonparties' lands or their ownership interest therein; it would affect those nonparties only in their ranching operation. So long as damages are recovered only for injuries to the land itself and not for loss in opera-

11. The term "animal unit" appears to have been used both as meaning a cow and a calf (a steer is considered ¾ of an animal unit) and to the land necessary to maintain one such animal unit. The appraisers using the term are talking in terms of land.

tions in the use of the land, other persons having a right of use are not affected. We therefore are convinced that as to the damages for injury to the land itself, the evidence of the plaintiffs was not designed to show injury and consequent damages to the ownership interests of nonparty members of the McGuire family.[12]

■ This same observation applies to the Prossers and their family corporation, Chalk Bluffs Ranch, Inc. Admitting that the Prossers individually had entered into a lease or other arrangement whereby Chalk Bluffs was to have the exclusive operation of the lands, title to the lands themselves remained in the Prossers and it is for injuries to that ownership that the Prossers are entitled to recover. The fact that company funds were used to restore the land to its former condition is of no point because Mr. Prosser's testimony is clear that this was in the nature of a loan and there is no evidence to contradict that. Although the company may have suffered its own injury and loss in that it lost the use of land to raise cattle and perhaps make a profit therefrom, the damages allowable to the Prossers are for the reduction in value of their capital investment. We therefore do not consider that the claim for permanent injury measured by reduction in the market value of the Prosser land in any way involves claims of Chalk Bluffs.

■ In making these comments we do not intend to be understood as holding that each of the families was damaged to the extent of $100,000 by reason of depreciation in value of their respective land holdings. That was a question for the jury and there was competent and credible evidence offered in behalf of the defendant that the

permanent land damage to the McGuires was $5,125.00 as contrasted with the $100–175,000 range of the McGuires' witnesses. This same witness fixed the permanent land damage of the Prossers at $10,200.[13] He did not attack the system of appraisal used by plaintiffs' witness but thought that his presented a better measure of the permanent damage. Which estimate represented the more acceptable value was and should remain a question for the jury.

However, as to those claims categorized as washed-away items, machinery damage and loss of use, we believe that as to both families the evidence establishes injury and loss to owners not included as parties and that the jury may have included damages for those injuries in its verdict. Tom McGuire testified that the family owned the personal property; it is equally clear that in part at least the loss of use of land and personalty, under the theories of the plaintiffs, was sustained by nonparty members of the family, e. g., the loss of use of pasturage for sheep which was a separate operation of Dan and Bing. There was considerable testimony about the diminution in the amount of cattle that could be raised upon the ranches during the restoration period and a large portion of the loss of use is claimed in that respect. As shown by the exhibit, the damages for these three items totaled $73,341.40, and it is plausibly argued by counsel for the McGuires that the jury reduced this total by only $7,200,[14] being the valuation of some beehives which appear clearly to have belonged to a nonparty member of the family. Who sustained the balance of the loss is impossible to say under the present state of the evidence, but it is not unreasonable to assume

---

12. Counsel for the McGuires by argument and by the comparison set forth in note 9, supra, demonstrates with considerable plausibility that the jury accepted defendant's expert's testimony of permanent damage, based on per-acre valuation. If it did this as to the McGuires it is reasonable to assume that it did the same thing as to the Prossers, and were it not for other material errors which we think require the verdict to be set aside, we would consider the verdict as justified by substantial evidence and affirm.

13. This expert classified all lands as to their productiveness, fixed the value before the flood on a per-acre basis for each such classification and their value after partial restoration, thereby arriving at the depreciation in these values as the damage for the permanent injury.

14. See note 9, supra.

that this represented a loss in the cattle operation and we must conclude from the record that all the family had an interest in this.

We have some doubt as to just what items are included in the Prosser claim, as shown on an exhibit similarly prepared during the course of testimony for these same categories of washed-away items, machine damage, and loss of use. The Prossers claimed $90,000 for loss of use, representing reduced cattle-carrying capacity of the damaged land. More strongly than in the case of the McGuires, who operated as a family, this loss of use appears to be a loss affecting the operation of the land and was one that was suffered by the corporation, not the individual Prossers. It therefore clearly appears that the jury has in this case been permitted to consider damages suffered by a nonparty and may have included that item in fixing the damages of the Prossers.

The argument of the McGuires that the McGuire recovery may be likened to an award of damages in an eminent domain case does not appeal to us. As shown in the cited authorities [15] the government in a condemnation action takes the entire parcel of land, wiping out all interests and estates. It is then up to the owners of those different estates to divide the payment. In the McGuire case we are not talking about separate estates in the same land but about people who hold separate interests in separate tracts of land and pool those lands as well as personalty commonly owned by them to produce and market livestock.

We agree with defendant that parties to the suit should not be permitted to recover damages for injuries sustained by persons or a corporation who are not parties to the suit. As said in 1 Sutherland on Damages (4th Ed. 1916), § 138, p. 429:

"*§ 138. Tortious act not an entirety as to parties injured.* A tortious act is not an entirety as to the persons affected by it; it may affect many persons and do a

severe injury to each. A single trespass upon real estate, injurious to the possession and to the inheritance, will be an entire cause of action if one person has the whole title and is in possession. But if one person has the possession and another a reversionary title a distinct wrong is done to each, for which each may bring a separate and independent action. * * * "

Under the Prosser oral lease Chalk Bluffs had the right of use of the lands separate and distinct from the ownership right of the Prossers. As to the McGuires, Bernard, Tom and Pat separately owned the fee in the only lands which were injured but shared their use with other members of the family. The single act of the defendant, its alleged negligence resulting in the failure of the dam, has therefore resulted in injuries to the inheritance or ownership interest of the Prossers and the three McGuires, while at the same time also injuring the respective rights of use or possession of Chalk Bluffs and of other members of the McGuire family. This renders pertinent the further statement from Sutherland, supra, § 139, p. 430:

"*§ 139. General and special owners.* In such case the damages will be according to the tenure by which the plaintiff holds and such as result from the injury he has suffered. He must show that his title gives him an interest in the damages he claims, and can recover none except such as affect his right. * * * "

It is clear from the record that the item of loss of use claimed by the Prossers, constituting a substantial amount of the damages claimed by them, was based on an injury to the possession vested in Chalk Bluffs, not a party to the suit and whose claims for damages could not be recovered by the Prossers. The same claim as to the McGuire lands, also constituting a substantial item, was similarly based upon injury to the possession enjoyed by the entire family, some of whom were not parties to the ac-

**15.** *People v. S. & E. Homebuilders,* 142 Cal. App.2d 105, 298 P.2d 53, rehearing denied, hearing denied (1956); *United States v. 70.39*

*Acres of Land,* D.C., 164 F.Supp. 451, 478 (1958).

tion and whose claims were not represented by the McGuire plaintiffs.[16]

We are not sure from the record as to the ownership of machinery and personal property included in the Prossers' claim of damages but observe that upon a retrial the trial judge should be careful to exclude any claim for such damages that might involve destruction of, repair to or loss of use of personalty not owned by the individual plaintiffs. As to the McGuires and the personalty that was owned by the family, it appears that damages have been allowed to only a part of the common owners who owned and had the use of what were described as washed-away items and machinery. Such damages should be sought either by all the owners thereof or there must be an apportionment thereof. As was said in *Waggoner v. Snody*, 98 Tex. 512, 85 S.W. 1134, 1135 (1905):

"* * * Where a joint owner of personal property brings a suit for damages thereto without joining the other owner or owners, he cannot recover the whole value of the property, or the damages which may have been inflicted upon it, but will be entitled to recover only his proportionate part of such value or damages, notwithstanding defendant has not pleaded the nonjoinder in abatement.[17] [Citing cases] The plaintiff's right being to recover his proportionate part of the damages, in order to establish that right it devolved upon him to show with reasonable certainty the extent of his interest in the property. * * *"[18]

It seems reasonably clear that the jury in arriving at its verdict based the amount

thereof on damages for loss of use of land, washed-away items and machinery damage which in whole or in part were sustained by persons or a corporation not party to the suit. We must therefore reverse the judgment and remand the proceedings for retrial upon the issue of damages as well as liability.

We now consider defendant's contention that any allowance for loss of use results in recovery of double damages, because when compensation is allowed for permanent injury that takes care of the whole loss. 25 C.J.S. Damages § 84b, p. 929, is cited:

"* * * Where depreciation in value is the proper measure of damage, damages for loss of enjoyment of property are not recoverable; so, where damages, because of the diminished enjoyment or use of the property, are claimed and also damages for permanent injury, the two awards must not be allowed to overlap. * * *"

■ We agree that there should be no overlapping of damages but think that proper consideration of plaintiffs' claims related to their special loss of use will not have that result. Some general principles derived from previous decisions of this court are pertinent. In *Blakeman v. Gopp*, 364 P.2d 986, 991 (Wyo.1961), with reference to recovery for personal injuries but with equal pertinence to property damages, it was said that damages are not calculable with absolute certainty but should be "susceptible of ascertainment with a reasonable degree of certainty." It is sufficient "if there is evidence which furnishes a basis from which a reasonable estimate of the

16. In holding as we do that the plaintiff owners cannot recover damages for injury to the possession, we do not mean to hold that they may not have suffered consequential loss to their ownership growing out of the injury. The situation is confused by the division between ownership and use in each case, but the close relationship between the owners and users is not a valid reason for ignoring the gap. Legally they stand in different shoes.

17. It thus appears that the usual rule that one who has failed to claim a defect of parties has waived the question, *Pickett v. Associates Discount Corporation of Wyoming*, 435 P.2d 445,

448 (Wyo.1967), is not applicable. The question is not use of proper parties but whether the plaintiffs have proved the amount that they are entitled to recover.

18. It is indicated in this case that had Snody been the bailee of the property he could have recovered the entire damage but this does not avail the McGuires in this case since if there was a bailment of the personal property it was to the entire family and not to those members thereof who were plaintiffs in the action.

money damage may be made." *Wyoming Wool Marketing Association v. Woodruff*, 372 P.2d 174, 181 (Wyo.1962). "The primary objective is to determine the amount of the loss and whatever rule is best suited to that purpose should be adopted." *Slane v. Curtis*, 41 Wyo. 402, 409, 286 P. 372, 374, 69 A.L.R. 906, rehearing denied, 288 P. 12 (1930), cited with approval in North Central Gas Company v. Bloem, 376 P.2d 382, 385 (Wyo.1962), in which latter case allowance of damages for injuries to real property based on the diminution in market value was sustained.

If the extent of the injury is fixed and definite at the time of the occurrence, it may not be difficult to apply the rule of diminution in value, but there are so many different situations possible that we do not think the before-and-after rule should be rigidly applied to the exclusion of all other considerations. In *North Central Gas Company*, supra, there was apparently no question of restoration or repair while in the case before us it appears that within the period of four years between the flood and the trial there had been a substantial restoration, the extent of which was disputed by the litigants. This statement from *Town Council of Town of Hudson v. Ladd*, 37 Wyo. 419, 425–426, 263 P. 703, 705 (1928) is then pertinent:

> " * * * The rule of damages, as we understand it, is that, where the injury to real property is of a permanent character, or cannot be repaired except at great expense, the measure of damages is the difference between the value of the property before and after the injury. * * *
>
> " * * * It is true that where the damage to real property is of a temporary character, or where it can be repaired at a small expense, the cost of the repair has often been held to be the measure of damages. * * * "

This last case makes no mention of loss of use but we think that in a restoration case no adequate reparation can be fixed unless it is considered. While the subject was injury to personal property we think that this court in *Colorado Kenworth,*

*Inc. v. Archie Meek Transportation Co.*, 495 P.2d 1183, 1186 (Wyo.1972) accepted the principle of inclusion of loss of use when it said, "A usual method of proof to sustain this type of loss ["down time" or "loss of use"] is the cost of hiring or renting another such vehicle."

For these reasons we hold that the owners' loss of use is a proper element to consider in arriving at the damages even where ownership and possession are separate. We have rejected the course pursued by plaintiffs principally because it showed the loss of use of the possessor and not the owner. The question that remains is how the value of the owners' loss of use is to be determined. We think that any approach to damages for this loss that is based upon the profitability of the operation is a speculative and fruitless venture and particularly inapplicable when the two uses are separated.

The late T. Blake Kennedy, Judge of the United States District Court for the District of Wyoming, in a carefully-considered opinion rendered in the early months of his long and distinguished career as a federal trial judge, dealt with and we think effectively disposed of this problem in *Sussex Land & Live Stock Company v. Midwest Refining Co.*, 276 F. 932, 942 (U.S.D.C.Wyo.1922). Plaintiff's lands had been subjected to a continuing trespass in the form of oil sludge deposited thereon in the course of defendant's operation of a nearby oil field. A strong effort was made to establish the amount of damages by providing the profitability of a livestock operation on an entire ranch of which the injured lands were an important component. In rejecting that approach Judge Kennedy cited authorities permitting recovery of prospective profits as to a going business, "providing they are proved with reasonable certainty so as to take them out of the realm of speculation, uncertainty and remoteness," but held that ranching was too speculative as to profits to use such a measure. He concluded that rental value would be a fair measure and fixed an annual rental value until the trespass should stop. The Court of Appeals for

the 8th Circuit likewise rejected any measure of damages except rental value. The opinion recognizes the special value of the lands as part of the plaintiff's ranching unit and holds that it was proper to show the manner in which they were used, but says:

" * * * Plaintiff is entitled to entire compensation for all of this loss to the degree to which it was suffered. It is entirely competent to show the above facts as bearing upon the question of damages. But to adopt these figures as the measure of damages is another matter and one which we think obviously erroneous. * * * With the above evidence, clearly insufficient as a basis of recovery, there was left only the evidence of rental value upon which to predicate any recovery for damages. * * *"
*Sussex Land & Live Stock Company v. Midwest Refining Co.*, 294 F. 597, 607–608 (8 Cir. 1923).

Compensation for loss of use on the basis of rental value is recognized in the texts:
" * * * [W]here plaintiff has been deprived of the use of premises, as by reason of injuries to them, he may recover their rental value for the time during which he is deprived of their use." 25 C.J.S. Damages § 84a, p. 927.

"Courts have approved several methods for measuring damages for loss of use. One method which has received wide approval is to award the rental, or, as it is sometimes called, the 'usable' value, of the property. * * * Thus, under this rule, rental value of property used for business purposes means, not the conjectural or even probable profits which might accrue to the plaintiff from his business, but the fair rental value of the premises in the open market. * * *"
22 Am.Jur.2d, Damages § 155, pp. 223–224.

In *Pritchard Petroleum Co. v. Farmers Co-op. Oil & Supply Co.*, 121 Mont. 1, 190 P.2d 55, 58 (1948) the court considered a statute which provided as the measure of damages for wrongful occupation the "value of the use of the property for the time of such occupation * * *." The court said that the "value of the use is ordinarily held to be the reasonable rental value of the premises withheld."

We believe that the rental value is a practical measure to be used in this case and would only comment further that since the lands were gradually being restored to their productivity, it is the impairment of that rental value that should be determined. The Prossers have "rented" their land to their family corporation at a rental which may have been less than the real market value thereof because of family considerations. The reasonable value of the rental should therefore be based upon free market considerations rather than their special arrangement.

Another element of loss through an injury of this kind may occur because even after as complete restoration or repair as is possible the property may still not have its former value. This was conceded in this case since witnesses for both parties agreed that some of the land would never by any reasonable expenditure be restored to productivity. Any measure of damages that did not permit consideration of that point would be improper.

Another element having a limiting effect on the amount of damages and one which we think was overlooked in the former trial is the age and condition of personal property, such as machinery, before the injury. As was said in *Slane v. Curtis*, supra, 41 Wyo. at 410, 286 P. at 374:
" * * * Since the primary object is to reimburse the plaintiff for his loss, he has no right to be placed in a better position than he would have been, if the property in question had not been removed and he would not, accordingly, be entitled to have property replaced in better condition and of greater value than the property removed. Hence while it was proper to show both the original cost of the property as well as the cost of replacement, the extent of the depreciation of the property, if any, should also appear and be taken into consideration. * * *"

Defendant's argument concerning testimony with respect to lost or damaged personalty is therefore well taken, although we could not find where proper objection to the introduction of evidence of the damages by injury to the personalty was made.

There remain three further assignments of error by the defendant.

■ On the basis that the trial court had imposed strict liability upon defendant for the failure of its dam, defendant contended in this court that there was error below in that the Prossers, owners of a small reservoir retaining some 15 acre feet of water, had not been charged as strictly liable proportionately for injuries caused by the breaking of its own dam. Inasmuch as we have already held that strict liability is not to be imposed in this case and that recovery, if sustained, must be on a theory of negligence, we consider that this point of the defendant's argument is no longer of any importance to the appeal.

Defendant also assigns error in the trial judge's refusal to receive in evidence certain photographic slides showing the alleged permanently damaged lands as of July, 1973. Slides showing conditions as they existed in April of that year were likewise rejected but defendant asserts error only as to the July pictures, contending that these pictures give a better representation of the condition of the growth of grass and were therefore particularly important on the question of permanent damage. All of the slides were shown to the jury on a projector, and comments made by the photographer, but the trial judge later ruled that they were inadmissible and instructed the jury to disregard, if it could, these pictures.

■ In *Reeder v. State*, 515 P.2d 969, 972 (Wyo.1973) it was said, "Generally the question of admission of photographs is left to the reasonable discretion of the trial court," citing earlier decisions of this court. Even though our court, except one justice, thought that in that case the admission of the photograph had been erroneous, the conviction was sustained on the basis that it

had not been shown that its introduction was prejudicial to the defendant. We doubt that the trial judge abused his discretion in excluding the pictures, but since the extent of the permanent injury will continue to be an important question in the case we would suggest only that all pictures and slides be carefully considered by the trial judge as to whether their viewing by the jury will assist it in its determination of damages.

Finally, we consider defendant's contention that the judgments in favor of both the Prossers and McGuires should be reduced by the amounts paid to the respective parties by the United States government under certain relief programs of that government. The Prossers received $10,723, $723 of which was used for constructing concrete-lined ditches in place of old dirt ditches which were lost when the flood inundated and destroyed a reservoir owned by the Prossers, and the balance of which was used in the construction of a new and enlarged reservoir in place of the old one. The McGuires received three payments, one to Bernard McGuire in the amount of $10,-104.49, one to Tom in the amount of $3,073.93, and one to Pat in the amount of $1,100. These amounts were received for the purpose of reconstructing fences, removing silt and debris, reseeding, restoration of drainage and irrigation systems, and renovating stock water wells.

■ Both parties recognize that the disposition of this question depends upon whether the "collateral-source" doctrine should be applied in this case. Under that doctrine benefits from a source collateral to a defendant will not reduce the damages otherwise recoverable from the defendant, 25 C.J.S. Damages § 99(1), p. 1011, and 22 Am.Jur.2d, Damages § 206, p. 286. Defendant does not question the rule's general merit but argues that it should not be applied in this case. Its first argument is that the rule is applied only to a wrongdoer and that in this case defendant's responsibility in damages has been imposed by summary judgment as a matter of strict liability so

that it is not a wrongdoer. We think that this argument is no longer applicable to this case since our original opinion (537 P.2d 1128) expressly rejected strict liability as the basis for recovery in this case.

 Defendant's argument that because it is a taxpayer the governmental contributions are analogous to payments made by a defendant's insurer does not appeal to us. We believe the collateral-source rule has been generally although not universally recognized by courts of this nation, and since defendant does not attack its general applicability we are not disposed to enter into discussion of arguments pro and con. Defendant claims there are no authorities pertinent to receipt of federal funds, and we are therefore urged to reach a result, unhampered by legal precedent to the contrary, which will be fair, just and equitable. The appellees have cited cases and authorities which we find pertinent. These cases disclose that the fact that benefits have been received from governmental sources does not preclude application of the rule: *A. H. Bull Steamship Co. v. Ligon*, 285 F.2d 936 (5 Cir. 1960) (drawing of social security and veterans' benefits); *United States v. Price*, 288 F.2d 448 (4 Cir. 1961) (payments from railroad retirement fund); *Amos v. Stroud*, 252 Ark. 1100, 482 S.W.2d 592 (1972) (workmen's compensation benefits); *Thompson v. Hauer*, 30 Ohio App.2d 110, 283 N.E.2d 180 (1971) (sick pay from company); *Merz v. Old Republic Insurance Company*, 53 Wis.2d 47, 191 N.W.2d 876 (1971) (medicare payments); *Joshmer v. Fred Weber Contractors*, 294 S.W.2d 576 (Mo.App.1956) (relief payments); and *Texas Power & Light Co. v. Jacobs,* Tex.Civ.App., 323 S.W.2d 483, rehearing denied, (1955) (veterans' administration medical payments). We therefore conclude that the trial court was correct in instructing the jury not to consider such payments and in refusing to require remittitur of these amounts.

## Summation

 When all the foregoing has been said and reviewed it occurs to us that we have in no way rejected the before-and-after valuation rule but have merely set forth the factors that must be considered in applying it to the particular facts of this case. The rule as usually stated is designed to determine the diminution in market value, that is, the price that a "willing buyer (one not forced to buy) would pay to a willing seller (one not forced to sell)" [19] and the usual time references for such determination would be immediately before and immediately after the injury. But it seems fairly obvious to us that any such buyer and seller, in fixing the value of the injured property, would necessarily have to give consideration to the factors which we have discussed: the extent of the injury; the probable expenditure in time, effort and money to bring the land back to a reasonably close approximation of its former productivity; the extent to which it can be restored to its former productivity; the period of time necessary for such restoration during which the capital investment will be tied up without adequate return of income; the loss of use, complete or partial, during such restoration period. If personal property is involved, special consideration must be given to the age and condition thereof prior to the injury in order that damages are not permitted in excess of the original value thereof. The measure of damages is truly the depreciation in the market value; these other matters are factors that must be considered in arriving at that result.

We think that the instructions of the trial court were essentially designed to give the jury this information and we find no adequate or proper exception taken thereto. We shall therefore not suggest a form of instruction but will leave it to the judge conducting the new trial to work out instructions embodying the principles which we have enunciated, fitting them to the particular evidence adduced. We would

19. *United States v. Certain Property in Borough of Manhattan*, 403 F.2d 800, 802 (2 Cir. 1968).

hope that upon the retrial plaintiffs will keep in mind some of the elemental principles pertaining to evidence as to damages and that defendant will present its objections to any proof at the time the facts are being presented in order that the court may pass upon its validity at the time that the objection serves some purpose. We see no objection to a bifurcated trial, proceeding first with the determination of the question of liability, and if the jury so finds, then presenting to that same jury the facts as to the damages.

We have already reversed the judgments entered in the two cases, and we now direct that upon remand of the proceedings there be a new trial upon the issues of both liability and damages consistent with this opinion. The court directs that each party bear its or their own costs in this appeal.